ULLMAN *v.* UNITED STATES (No. 19).[1]

1. RATE ON ENTRY OF GOODS DEPRECIATED IN VALUE.

Where imported merchandise offered for entry has depreciated from its invoice value, the rate of duty is to be determined by considering not alone section 19 of the customs administrative act of 1890, but effect must be given to section 7 of said act and the duty should not be assessed in any case upon an amount less than the invoice or entered value.

2. TREASURY REGULATION OF APPRAISEMENT, FORCE OF.

A regulation issued by the Treasury Department permitting entry by appraisement without invoice is not valid, in so far as the regulation might be construed to abrogate section 7 of the customs administrative act of 1890, requiring that in no case shall an assessment be fixed on an amount less than the invoice or entered value.

United States Court of Customs Appeals, October 28, 1910.

APPEAL from Board of United States General Appraisers, G. A. 6918 (T. D. 29883), to United States Circuit Court, Southern District of New York (T. D. 30298); appeal thence to United States Circuit Court of Appeals and transferred.

[Affirmed.]

*John Giblon Duffy* (*Joseph G. Kammerlohr* of counsel) for appellant.

*D. Frank Lloyd*, Assistant Attorney General (*Thomas M. Lane* on the brief), for the United States.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

Appellant entered at the port of New York a quantity of sealskins under a consular invoice showing the cost to him, and at the same time offered evidence to the collector to show that after the date of the purchase of these skins in London the market value had materially decreased, and sought to enter his merchandise at the correct market values as of the date of exportation to this country. This offer was accompanied by papers showing the correct market value. The collector indorsed upon these papers his rejection of the same, and ordered that the entry be made at the actual purchase price, which was done accordingly. The case came before the appraiser for appraisement, and that officer appraised the goods at the invoice price. It appears that this action was purely perfunctory and based upon a construction of the law which, in his view, made it imperative that he should assess at not less than the invoice value.

The question presented for decision, therefore, is whether on the undisputed facts, where it appears that the invoice value was greater than the actual value of the goods at the date of exportation to this country, the invoice value or the actual value was the proper basis for assessment.

The material provisions of law to be considered are the following:

Furs, dressed on the skin but not made up into articles * * * twenty per centum ad valorem. (Paragraph 426, tariff act of 1897.)

* * * The duty shall not, however, be assessed in any case upon an amount less than the invoice or entered value. (Sec. 7, customs administrative act.)

---

[1] Reported in T. D. 31032 (19 Treas. Dec., 1113).

That whenever imported merchandise is subject to an ad valorem rate of duty * * * the duty shall be assessed upon the actual market value or wholesale price of such merchandise as bought and sold in usi al wholesale quantities, at the time of exportation to the United States. * * * (Sec. 19, customs administrative act.)

It is insisted by the appellant that by the very terms of the act imposing the duty on an ad valorem basis the basis of actual value is to be implied. This, in the absence of other provisions of the tariff law, would undoubtedly be correct.

It is further insisted that section 7 of the customs administrative act under which the assessment was made at the invoice value is controlled by section 19 of the same act, which provides that the duty shall be assessed upon the actual market value or wholesale price as bought and sold in usual wholesale quantities at the time of exportation to the United States, and the rule is invoked that where a conflict is found between two statutes or two sections in the same statute the later provision must prevail as the latest expression of the legislative intent.

This is without doubt the general rule of construction. If it has application with full force to this case the appellant's contention must be allowed. But this rule is subject to certain recognized exceptions and should never be applied except in case where the repugnancy between the two provisions of the statute is irreconcilable The statute is to be construed with reference to other statutes in pari materia, and as is well stated by the author in Endlich on Interpretation of Statutes, section 183, by a general survey of the whole context, and the provisions are to be made to stand together if possible.

The Supreme Court has applied this modification of the rule in construing revenue laws. As was said in United States v. 67 Packages of Dry Goods (17 Howard, 85):

In the interpretation of our system of revenue laws, which is very complicated, this court has not been disposed to apply with strictness the rule which repeals a prior statute by implication where a subsequent one has made provision upon the same subject and differing in some respects from the former, but have been inclined to uphold both unless the repugnancy is clear and positive so as to leave no doubt as to the intent of Congress.

If we apply this rule and consider the history of the provisions under consideration, we think little doubt can be left that it was the intention of Congress to perpetuate the provisions of section 7, which are not new to the tariff laws, but have been in one form or another embodied in every tariff enactment since 1818, so far as our examination has enabled us to determine. Not only is this true, but this law has been applied where there was the same room for contention for a repeal by subsequent enactment as there is in this case for the claim of repeal by a later provision of the same statute. The case of Kimball v. Collector (10 Wallace, 436) is in point.

The contention now urged was made to very similar provisions in the case of Ballard *v.* Thomas (19 Howard, 382). The eighth section of the act of 1846 provided "that under no circumstances shall the duty be assessed upon an amount less than the invoice value, any law of Congress to the contrary notwithstanding."

It was claimed that this section had been repealed by the act of Congress of March 3, 1851, which provided that the collector should "cause the actual market value, or wholesale price thereof at the period of the exportation to the United States, in the principal markets of the country from which the same shall have been imported * * * to be appraised * * * and to such value or price shall be added all costs and charges, * * * as the true value at the port where the same may be entered * * *."

It was said:

Previous to this act, the time when the value of the article in the foreign market was to be ascertained was the time of the purchase, now, by the act of 1851, the time of exportation. There is no change, however, in the rule which must govern in making the valuation—it is the actual market value or wholesale price in the principal markets of the country from which the article shall have been imported. The only real change, therefore, in respect to this matter, under the law of 1851, from that of 1842 and 1846, would seem to be a change of the time when the valuation is to take place, without intending to interfere with any other of the regulations in the former laws.

The court therefore sustained both provisions.

We conclude that section 19 and section 7 are to be read together, and that section 19 is qualified by section 7; that when an actual assessment is made upon information to be derived by the collector, the assessment is provided for by section 19; but that, reading section 7 in connection with section 19, there is a clear limitation placed upon the action of the collector, and that in no case can the assessment be less than the invoice or entered value.

As was intimated by the court in Kimball *v.* Collector (supra), the redress for such a grievance as exists in the present case should be sought in Congress, and it is proper to note that Congress in the tariff act of 1909 has amended section 7 so as to permit of the entry at less than the purchase price where injustice would otherwise be done.

It is further claimed that article 1450 of the Customs Regulations of 1899 gave the right to the importer to have his goods entered at the lower rate. Section 251 of the Revised Statutes imposes upon the Secretary of the Treasury the duty to prescribe rules and regulations *not inconsistent with law* to be used under and in the execution and enforcement of the various provisions of the internal-revenue laws or in carrying out the provisions of law relating to revenues from imports, or to duties on imports, or to warehousing. Manifestly, the first requisite as to a regulation by the collector is that the rules prescribed shall not conflict with existing law. Acting under this pro-

vision of the statute, the Secretary of the Treasury issued article 1450 of the Customs Regulations of 1899 so called, which reads as follows:

In cases where it has been clearly shown that the invoice value of an importation was far beyond the general market value of similar goods at the time of exportation, entry by .appraisement without invoice may be allowed with the approval of the Secretary of the Treasury in each case.

Passing by the fact that the approval of the Secretary of the Treasury was sought in this case and denied, and assuming power in the courts to review the exercise of his quasi judicial power in refusing such approval, it still must be held that as applied to the present case this regulation is not valid in so far as it might be construed to abrogate section 7 of the customs regulation act in the present case.

The decision of the circuit court, which affirmed the decision of the Board of General Appraisers, is affirmed.