UNITED STATES *v.* BENNETT & LOEWENTHAL (No. 455).[1]

The entry was made on a pro forma invoice, on or about April 25, 1907. On May 2 the importers filed a consular invoice duly certified, showing the consignment cost less than the amount stated in the pro forma invoice. On May 9 the assistant appraiser made a return on the pro forma invoice showing it to be correct, and apparently on the same day the appraiser's approval was indorsed thereon. The collector's notation on the pro forma invoice showed the entered value to be the same as that approved by the appraiser. Later, on May 13, at the request of the appraiser the pro forma invoice was returned to him, and on the next day it was sent to the collector by the assistant appraiser with a notation correcting by diminishing the stated value of the consignment, but no approval of this act by the appraiser is shown, and the collector thereupon indorsed "No reduction in entered value allowed." The importers took no appeal.

1. DUTY OF AN APPRAISER.

An appraiser, after having once performed the duty of appraisement in respect of any particular merchandise and after having made his return thereof to the collector, has no authority of his own volition to make another appraisement of the same merchandise.—United States *v.* Frank & Lambert (2 Ct. Cust. Appls., 239; T. D. 31973).

2. PROCEEDINGS ON A PRO FORMA ENTRY NOT SIMPLY TENTATIVE.

Reviewing at length the history of the legislation, the practice of the Treasury Department and the decisions of the courts as well, no warrant is found for the statement that an entry upon a pro forma invoice should be held open until the certified invoice is produced or the bond given for its production has been forfeited; nor is any authority found for holding that liquidation is proper on an amount less than the entered value in case an entry is made upon a pro forma invoice, no manifest clerical error or duress appearing.

[1] Reported in T. D. 31975 (21 Treas. Dec. 446).

3. THE FUNCTION OF A PRO FORMA INVOICE.

A pro forma invoice is for entry purposes a recognized lawful invoice made under oath as a substitute for a regularly certified invoice; a penalty for undervaluation in such an invoice may be inflicted and an entry on a pro forma invoice is such an entry as the language of section 7, customs administrative act of 1890, should and must apply to, namely, "the duty shall not, however, be assessed in any case upon an amount less than the invoice or entered value."

United States Court of Customs Appeals, October 16, 1911.

TRANSFERRED from United States Circuit Court of Appeals, Second Circuit, Abstract 19656 (T. D. 29267).

[Reversed.]

*D. Frank Lloyd*, Assistant Attorney General (*Charles E. McNabb* on the brief), for the United States.

*Oppenheimer & Arnold* for the appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the Circuit Court for the Southern District of New York sustaining the decision of the Board of General Appraisers. The board reversed the action of the collector.

The undisputed facts are, that about April 25, 1907, the appellees made an entry of imitation horsehair upon a pro forma invoice, showing the value of the horsehair at 19 marks per kilogram. At the time the entry was made the importers did not know the true value of the horsehair, but stated the same in said invoice upon the basis of earlier shipments. This entry was made in order to get possession of the goods as promptly as possible. Within a few days, and not later than May 2, the importers received and filed in the customhouse a duly certified consular invoice showing the cost of the horsehair to be 18.50 marks per kilogram.

May 9 the assistant appraiser made a return on the pro forma invoice showing it to be correct, and apparently on the same day the appraiser's approval was indorsed thereon. Then follows the collector's notation upon the pro forma invoice, showing the entered value to be the same as the amount so approved by the appraiser. May 13 the collector returned the pro forma invoice to the appraiser at his request; on the next day it was returned to the collector by the assistant appraiser with a notation thereon addressed to the collector stating that the correct value was 18.50 marks per kilogram instead of 19 marks as stated in the pro forma invoice. No approval on the part of the appraiser of this action of the assistant appraiser is shown, and the indorsements on the pro forma invoice conclude with that of the collector in the following words: "No reduction in entered value allowed."

The collector liquidated the entry May 28 at the value of 19 marks per kilogram, refusing to allow any reduction in the entered value upon the ground that the attempted second appraisement on the part

of the assistant appraiser, if it was such, shown as above, after the pro forma invoice had first been returned to him by the appraiser, was unwarranted and illegal, and that the liquidation of the entry must be governed by section 32 of the act of July 24, 1897, providing that—

The duty shall not however be assessed in any case upon an amount less than the invoice or entered value.

The importers did not apply for leave to amend their entry under the provisions of article 1449 of the Customs Regulations of 1899 then in force, did not claim a clerical error had been made in their entry, and did not ask for a reappraisement under section 13 of the customs administrative act of June 10, 1890.

The material part of the protest was as follows:

We claim that your assessing duty on our pro forma invoice value is unjust for the reason that we notified the collector in ample time before our goods were examined that our pro forma invoice value was wrong, and submitted to him our consular invoice bearing the correct market value of these goods. When upon examination the appraiser reported the correct market value to be that amount which appeared on the consular invoice, and upon liquidation the collector assessed duty on the pro forma invoice amount, whereby the duty, as per G. A. 5856 (T. D. 25801), should have been assessed upon the consular invoice value, which was reported to be correct by the appraiser.

The Board of General Appraisers held that "the merchandise should have been assessed for duty upon the value in the consular invoice, the appraiser having approved that value," and relied as authority for such holding upon the Foard case (T. D. 28796), to which reference will later be had.

The United States appealed to the Circuit Court for the Southern District of New York, where, as stated, the action of the Board of General Appraisers was affirmed, but no written opinion appears to have been filed in the case. The United States again appealed to the Circuit Court of Appeals for the Second Circuit, and before hearing there the case was duly removed to this court.

At the time the entry was made the certified consular invoice had not arrived and a bond was given for its production pursuant to the provisions of section 4 of the customs administrative act of June 10, 1890. The conditions of the bond were as follows:

Now, therefore, the condition of this obligation is such that if the above bounden obligors, or either of them, or either of their heirs, executors, or administrators, shall and do, within six months from date hereof; produce to the collector of the customs for the district a duly authenticated invoice of the said goods, wares, and merchandise, and shall pay to the said collector the amount of duty to which it shall appear by such invoice said goods, wares, and merchandise are subject, over and above the amount of duties estimated on the appraisement of said goods, wares, and merchandise, then the above obligation to be void; otherwise to remain in full force and virtue.

It is not claimed that the importers did not act in good faith.

As already appears, the Board of General Appraisers in its decision said that the appraiser had approved the value stated in the consular invoice. We have recited all the evidence appearing of record upon that subject and are at a loss to know how this conclusion could have been reached by the board. Counsel for appellees do not suggest how this statement in the finding of the board can be sustained.

The law then apparently in force (Rev. Stat., sec. 2615), with reference to assistant appraisers at the port of New York, provided that they should "examine and inspect such goods, wares, and merchandise as the appraiser may direct and truly report to him the true value thereof according to law. Such reports shall be subject to revision and correction by the appraiser, and when approved by him shall be transmitted to the collector and shall be deemed an appraisement by the United States local appraiser of the district of such merchandise required by law." (See also Rev. Stat., sec. 2943.)

In this connection we notice that by section 1 of the act of July 27, 1866, which seems still to be in force, it is provided that the appraiser "in cases of his necessary and occasional absence may perform his functions *ad interim* by deputy designated by him in writing from the assistant appraisers."

No claim is made in this case, however, that the assistant appraiser who attempted what may be called this second appraisement was deputized as above provided. Neither does his signature nor report import such authority. In addition, such action on his part was ignored by the collector, who recognized only the appraisal as made by the assistant and approved by the appraiser as final and the value ascertained thereby to be the appraised value of the importation.

Under section 13 of the customs administrative act, hereinafter quoted, the return of the appraiser to the collector, unless reappraisement is had as therein provided, establishes the appraised value of the importation.

Under article 1241 of the Customs Regulations of 1899 the return of the appraiser could not be reconsidered or modified by him after it was lodged with the collector except in case of clerical error. No statute or authority has been called to our attention which warrants the conclusion that the appraiser has authority, unless it be in case of clerical error, to change an appraisement once made and returned to the collector. To so hold might involve inextricable confusion and uncertainty and work delay in the due administration of the revenue laws contingent upon the change of mind or a whim upon the part of an appraiser. Of course an assistant appraiser could have no such authority.

We think that an appraiser after having once performed the duty of appraisement in respect to any particular merchandise and after having made his return thereof to the collector has no authority of his own volition to make another appraisement of the same mer-

chandise. It follows, therefore, that the collector was justified in disregarding the attempted reconsideration or modification, if it may be so called, of the first appraisement made in this case, and that it was his duty to recognize, as he did, that the value of the importation was fixed by the appraisal made thereof and returned to him on the 9th day of May, 1907, unless it may hereinafter for other reasons be found invalid.

It will be observed that from this appraisement the importers took no appeal.

We do not lose sight of the contention on the part of the appellees that the proceedings which we have already recited do not constitute in law an appraisement.

In the case of United States *v.* Frank & Lambert (2 Ct. Cust. Appls., 239; T. D. 31973), heard at our September term, 1910, and which is considered with this case, we have more fully discussed this question, and reference may be had thereto for a full expression of our views upon this subject. It is sufficient here to say that in view of the statutes and the adjudicated cases, amongst which are Arthur *v.* Unkart (96 U. S., 118), Gibbs *v.* Washington (1 McAll., 430), and Wolff *v.* United States (1 Ct. Cust. Appls., 181; T. D. 31217), we conclude that, unless the same becomes of no force by reason of matters hereinafter considered, the appraisement in this case was duly and lawfully made.

The further and important question in this case is whether, when an entry, in the absence of a duly certified invoice as required by law, is made upon an affidavit and a statement in the form of an invoice or otherwise, showing the actual cost of the merchandise and the statutory bond given for the production of the certified invoice, such proceedings are purely tentative, and it then becomes the duty of the customs officers to withhold appraisement and liquidation until the certified invoice required by law has been produced within the term of the bond, or, in default thereof, the bond has been declared forfeited. Of course if these proceedings are tentative the appraisement made, as appears above, was premature and goes for naught.

It is said that this matter is of much importance as affecting customs practice, and it seems from the various decisions to which we are referred that the question has been one of doubt, both on the part of the board and of the courts.

We insert here so much of the provisions of the customs administrative act of June 10, 1890, as amended by the act of July, 1897, and which constitutes the statute law in force when this importation was made, as seems to be involved in the determination of the question.

Sec. 2. That all invoices of imported merchandise shall be made out in the currency of the place or country from whence the importations shall be made or, if purchased in the currency actually paid therefor, shall contain a correct description of such merchandise, and shall be made in triplicate or in quadruplicate in case of merchandise intended for immediate transportation without appraisement, and signed by the person

owning or shipping the same, if the merchandise has been actually purchased, or by the manufacturer or owner thereof, if the same has been procured otherwise than by purchase, or by the duly authorized agent of such purchaser, manufacturer, or owner.

Sec. 3. That all such invoices shall, at or before the shipment of the merchandise, be produced to the consul, vice consul, or commercial agent of the United States of the consular district in which the merchandise was manufactured or purchased as the case may be, for export to the United States, and shall have indorsed thereon, when so produced, a declaration signed by the purchaser, manufacturer, owner, or agent setting forth that the invoice is in all respects correct and true, and was made at the place from which the merchandise is to be exported to the United States; that it contains, if the merchandise was obtained by purchase, a true and full statement of the time when, the place where, the person from whom the same was purchased, and the actual cost thereof and of all charges thereon, as provided by this act; and that no discounts, bounties, or drawbacks are contained in the invoice but such as have been actually allowed thereon; and when obtained in any other manner than by purchase, the actual market value or wholesale price thereof at the time of exportation to the United States in the principal markets of the country from whence exported; that such actual market value is the price at which the merchandise described in the invoice is freely offered for sale to all purchasers in said markets, and that it is the price which the manufacturer or owner making the declaration would have received, and was willing to receive, for such merchandise sold in the ordinary course of trade, in the usual wholesale quantities, and that it includes all charges thereon as provided by this act; and the actual quantity thereof; and that no different invoice of the merchandise mentioned in the invoice so produced has been or will be furnished to anyone. If the merchandise was actually purchased, the declaration shall also contain a statement that the currency in which such invoice is made out is that which was actually paid for the merchandise by the purchaser.

Sec. 4. That, except in case of personal effects accompanying the passenger, no importation of any merchandise exceeding one hundred dollars in dutiable value shall be admitted to entry without the production of a duly-certified invoice thereof as required by law, or of an affidavit made by the owner, importer, or consignee, before the collector or his deputy, showing why it is impracticable to produce such invoice; and no entry shall be made in the absence of a certified invoice, upon affidavit as aforesaid, unless such affidavit be accompanied by a statement in the form of an invoice, or otherwise, showing the actual cost of such merchandise, if purchased, or if obtained otherwise than by purchase, the actual market value or wholesale price thereof at the time of exportation to the United States, in the principal markets of the country from which the same has been imported; which statement shall be verified by the oath of the owner, importer, consignee, or agent desiring to make entry of the merchandise, to be administered by the collector or his deputy, and it shall be lawful for the collector or his deputy to examine the deponent under oath touching the sources of his knowledge, information, or belief in the premises, and to require him to produce any letter, paper, or statement of account, in his possession, or under his control, which may assist the officers of customs in ascertaining the actual value of the importation or any part thereof; and in default of such production when so requested, such owner, importer, consignee, or agent shall be thereafter debarred from producing any such letter, paper, or statement for the purpose of avoiding any additional duty, penalty, or forfeiture incurred under this act, unless he shall show to the satisfaction of the court or the officers of the customs, as the case may be, that it was not in his power to produce the same when so demanded; and no merchandise shall be admitted to entry under the provisions of this section unless the collector shall be satisfied that the failure to produce a duly certified invoice is due to causes beyond the control of the owner, consignee, or agent thereof: *Provided*, That the Secretary of the Treasury may make regulations by which books, magazines, and other periodicals published and imported in successive parts, numbers, or volumes,

and entitled to be imported free of duty, shall require but one declaration for the entire series. And when entry of merchandise exceeding one hundred dollars in value is made by a statement in the form of an invoice the collector shall require a bond for the production of a duly certified invoice.

SEC. 5. That whenever merchandise imported into the United States is entered by invoice, one of the following declarations, according to the nature of the case, shall be filed with the collector of the port, at the time of entry by the owner, importer, consignee, or agent; which declaration so filed shall be duly signed by the owner, importer, consignee, or agent, before the collector, or before a notary public or other officer duly authorized by law to administer oaths and take acknowledgments, who may be designated by the Secretary of the Treasury to receive such declarations and to certify to the identity of the persons making them, under regulations to be prescribed by the Secretary of the Treasury; and every officer so designated shall file with the collector of the port a copy of his official signature and seal: *Provided,* That if any of the invoices or bills of lading of any merchandise imported in any one vessel, which should otherwise be embraced in said entry, have not been received at the date of entry, the declaration may state the fact, and thereupon such merchandise of which the invoices or bills of lading are not produced shall not be included in such entry, but may be entered subsequently. * * *

[Here follow appropriate forms which it is not material to insert.]

SEC. 7. That the owner, consignee, or agent of any imported merchandise which has been actually purchased may, at the time when he shall make and verify his written entry of such merchandise, but not afterwards, make such addition in the entry to the cost or value given in the invoice or pro forma invoice or statement in the form of an invoice, which he shall produce with his entry, as in his opinion may raise the same to the actual market value or wholesale price of such merchandise at the time of exportation to the United States, in the principal markets of the country from which the same has been imported; but no such addition shall be made upon entry to the invoice value of any imported merchandise obtained otherwise than by actual purchase; and the collector within whose district any merchandise may be imported or entered, whether the same has been actually purchased or procured otherwise than by purchase, shall cause the actual market value or wholesale price of such merchandise to be appraised; and if the appraised value of any article of imported merchandise subject to an ad valorem duty or to a duty based upon or regulated in any manner by the value thereof shall exceed the value declared in the entry, there shall be levied, collected, and paid, in addition to the duties imposed by law on such merchandise, an additional duty of one per centum of the total appraised value thereof for each one per centum that such appraised value exceeds the value declared in the entry, but the additional duties shall only apply to the particular article or articles in each invoice that are so undervalued, and shall be limited to fifty per centum of the appraised value of such article or articles. Such additional duties shall not be construed to be penal, and shall not be remitted, nor payment thereof in any way avoided, except in cases arising from a manifest clerical error, nor shall they be refunded in case of exportation of the merchandise, or on any other account, nor shall they be subject to the benefit of drawback: *Provided,* That if the appraised value of any merchandise shall exceed the value declared in the entry by more than fifty per centum, except when arising from a manifest clerical error, such entry shall be held to be presumptively fraudulent, and the collector of customs shall seize such merchandise and proceed as in case of forfeiture for violation of the customs laws, and in any legal proceeding that may result from such seizure, the undervaluation as shown by the appraisal shall be presumptive evidence of fraud, and the burden of proof shall be on the claimant to rebut the same and forfeiture shall be adjudged unless he shall rebut such presumption of fraudulent intent by sufficient evidence. The forfeiture provided for in this section shall apply to the whole of the merchandise or the value thereof in the case or package containing the

particular article or articles in each invoice which are undervalued: *Provided further,* That all additional duties, penalties, or forfeitures applicable to merchandise entered by a duly certified invoice, shall be alike applicable to merchandise entered by a pro forma invoice or statement in the form of an invoice, and no forfeiture or disability of any kind, incurred under the provisions of this section shall be remitted or mitigated by the Secretary of the Treasury. The duty shall not, however, be assessed in any case upon an amount less than the invoice or entered value.

SEC. 14. That the decision of the collector as to the rate and amount of duties chargeable upon imported merchandise, including all dutiable costs and charges, and as to all fees and exactions of whatever character (except duties on tonnage), shall be final and conclusive against all persons interested therein, unless the owner, importer, consignee, or agent of such merchandise, or the person paying such fees, charges, and exactions other than duties, shall, within ten days after "but not before" such ascertainment and liquidation of duties, as well in cases of merchandise entered in bond as for consumption, or within ten days after the payment of such fees, charges, and exactions, if dissatisfied with such decision give notice in writing to the collector, setting forth therein distinctly and specifically, and in respect to each entry or payment, the reasons for his objections thereto, and if the merchandise is entered for consumption shall pay the full amount of the duties and charges ascertained to be due thereon. * . * *

It may be stated at the outset that an entry made on affidavit and statement in the form of an invoice or otherwise is generally known as an entry made upon a pro forma invoice, and will usually be so referred to here.

It will be observed that the most careful scrutiny of these sections fails to discover any express provision that the proceedings on a pro forma entry are tentative purely and so appraisement and liquidation are to be suspended until the certified invoice is produced or the bond forfeited; but it having been stated in some decisions, which will later be referred to, that such has been the practice, and is the law, we proceed to examine as briefly as may be the history of legislation upon the subject, and to consider so far as is ascertainable what the practice in this regard has been.

It appears in chapter 4, Title XXXIV, of Revised Statutes, that as early as 1799 the owner or consignee of merchandise imported or their agent at the time of entry thereof was required to produce the original invoice and give in writing certain information relating thereto, designed to aid in the ascertainment of its value. If the particulars of any merchandise were unknown, entry was permitted to be made according to the circumstances of the case, provided the party making the same declared upon oath such knowledge as he might possess or his belief in the premises, stating that he had no other, and the collector whenever an entry was imperfect for want of invoices, bills of lading, or other causes, was required to take the merchandise into his custody until the quantity, quality, or value thereof, as the case might be, could be ascertained. (See Rev. Stats., secs. 2785, 2786, 2787, 2788, and 2789.)

By the act of March, 1823, it was in substance provided that no entry of merchandise subject to an ad valorem duty should be made,

unless "the true invoice of the same be presented to the collector at the time of entry," but it was further enacted that in certain cases where no invoice had been received the collector, if he deemed expedient, might permit an entry on appraisement to be made if the person making the same gave a sufficient bond to produce the invoice within a time stated, and it was also provided that when the invoice was wanting and the merchandise was imported and not entered, it should be deposited in a public warehouse at the expense and risk of the owner until the invoice was produced. (See 3 Stat. L., 729.)

The act of March, 1863, required that all invoices of imported merchandise should be presented to the consular office abroad for certification to be made thereon, showing, among other things, the price paid therefor, and that no merchandise imported into this country should be admitted to entry unless the invoice presented contained such certificate. The invoices and certificates were to be made in triplicate, one of which was to be delivered to the person presenting the invoice, another to be kept by the consul, and the other transmitted by him to the collector of the stated port of entry in this country. It was also provided that if, on account of any change in the destination of the goods, after the production of the invoice to the consul, or from other cause, the triplicate transmitted to the collector of the port to which the merchandise was originally destined should not have been received at the port where the merchandise actually arrived, that entry might be made provided that a bond was given for the payment of the duty which might be found to be actually due thereon, in which case the collector at the port of entry was required to immediately notify the certifying consul, whose duty thereupon was to transmit a certified copy of the triplicate remaining in his hands. In that event it was provided "said duty shall not be finally liquidated until such triplicate or certified copy thereof shall have been received: *Provided*, That such liquidation shall not be delayed longer than eighteen months from the time of making such entry."

The act further provided that when from accident or other cause it was impracticable for the person desiring to make an entry of merchandise to produce at the time any invoice required by law it should be lawful for the Secretary of the Treasury to authorize an entry of such merchandise upon such terms and in accordance with such general or special regulations as he might prescribe. (12 Stat. L., 737, 738, 739.)

We note here that no reference to delayed liquidation is found in this act, except as above stated.

By the act of June, 1874, sometimes known as the "antimoiety act," Congress expressly and for the first time appears to have authorized an entry to be made in the absence of the certified invoice,

provided the person making the entry made affidavit showing why it was impracticable to produce such invoice, and accompanied the entry by a statement in the form of an invoice, or otherwise, also under oath, showing either the actual cost of the merchandise, or to the best of the knowledge, information, and belief of the deponent, the foreign market value thereof; and it was further therein provided that the collector might examine the person making such entry under oath touching the source of his knowledge or belief in the premises and require him to produce any letter or paper in his possession or under his control which might assist the customs officers in ascertaining the dutiable value of the merchandise.     (See 18 Stat. L., 186, 187, 188.)

Section 4 of the customs administrative act of June 10, 1890, above quoted, is a substantial reenactment of the statute last referred to, and in addition provides that when entry of merchandise exceeding $100 in value is made upon a statement in the form of an invoice the collector shall require a bond for the production of a duly certified invoice.

It should be observed here that nearly if not all the foregoing statutes refer to the entry of merchandise, not personal effects accompanying a passenger, and where the value thereof exceeds $100.

Beginning with the customs regulations of 1857, which are the earliest to which our attention has been called, it has always been required when an entry has been made upon a pro forma invoice, whether such entry was permitted only in the discretion of the Secretary of the Treasury, or was expressly authorized by statute, that a bond conditioned substantially like the one given in this case should be furnished by the person making the entry, and the bond has always in substance provided for the payment of such additional amount of duty as it shall appear by the certified invoice the importation was subject, over and above the amount estimated on the assessment thereof.     (Customs Regulations of 1857, art. 213; 1874, art. 334; 1884, art. 326; 1892, art. 285; 1899, art. 394.)

It appears that subsequent to the act of 1874 and until October, 1878, entries, when permitted to be made upon a pro forma invoice, were treated as to their liability to penal duties in case of undervaluation in the same manner as entries made upon a duly certified invoice, or other invoice, required by law.     (Report of the Secretary of the Treasury on the collection of duties, 1885, pp. 64–65, and Customs Regulations of 1874, arts. 341, 486.)

In 1878 an importer raised the question that section 2900 of the Revised Statutes providing for the collection of additional duties in cases of undervaluation in entries did not apply to an undervaluation made in a pro forma invoice.     The Attorney General considered the matter and sustained the contention of the importer.     (See Opins. Atty. Gen., vol. 16, pp. 158–161.)

It also appears from the report of the Secretary of the Treasury on the collection of duties, 1885, pages 64 and 65, and the report of the same official on the revision of the tariff, 1886, pages xxxii and xxxiii, that consequent upon the foregoing ruling of the Attorney General the number of entries upon pro forma invoices had astonishingly increased and the Secretary submitted in these reports facts that then seemed to warrant the belief that large frauds upon the revenue were practiced under the guise of these pro forma invoices. The attention of Congress was, by the Secretary, invited to this subject and legislation suggested to relieve the situation and prevent the claimed existing frauds.

The Secretary of the Treasury, in his report, December 3, 1888 (see H. Ex. Docs., 2d sess., 50th Cong., p. xxxi), again referred to the subject of merchandise entered upon pro forma invoices and recommended—

The amendment of the law so as to subject merchandise entered upon a pro forma invoice to the same conditions as are imposed in case of entry upon "original" or regularly certified invoices.

Congress, by section 7 of the customs administrative act of June 10, 1890, either in reply to the recommendations of the Secretary of the Treasury, to which we have referred, or for other considerations which were presented to it, enacted—

That all additional duties, penalties, or forfeitures applicable to merchandise entered by a duly certified invoice shall be alike applicable to merchandise entered by a pro forma invoice or statement in the form of an invoice. * * * The duties shall not, however, be assessed in any case upon an amount less than the invoice or entered value.

Since the enactment of this statute it appears to have been considered that the penalty for an undervaluation applies to the value stated in a pro forma invoice. United States *v.* Merck (91 Fed. Rep., 641); *In re* Leggett & Co. (T. D. 10548).

But the Treasury Department, as it already appears, held that the previous statutes should receive the same construction and had so applied them until the adverse ruling on the subject by the Attorney General in 1878. That this attitude of the Department was not wholly without show of reason may be gathered from a brief review of the statutes upon which it was based. In 1846 (9 Stat. L., p. 43) it was provided—

That under no circumstances shall duty be assessed upon an amount less than the invoice value, any law of Congress to the contrary notwithstanding.

And similar provisions are found in the act of March 3, 1857 (11 Stat. L., 199), act of March 3, 1865 (13 Stat. L., 491–494), act of July 28, 1866 (14 Stat. L., 328–330); Rev. Stats., sec. 2900), in which the precise language was, " the duty shall not, however, be assessed upon an amount less than the invoice or entered value."

The Treasury Department, in addition to its persistent and consistent claim upon this subject, had kept in its regulations. during all the time substantially the following provisions relating to this subject:

Where imports have been entered on affidavit and statement, in the absence of an invoice, and the value in the invoice afterwards produced is less than that found by the appraiser on the entry, no allowance by return of duties can be made for the difference. But if the invoice shows a value greater than that ascertained by the appraisement the United States will be entitled to duties on such excess value. (Cust. Regs. of 1857, art. 360; 1874, art. 341; 1884, art. 329; 1892, art. 285; 1899, art. 394.)

And there is nothing whatever in this case tending to show, and it is not claimed, that these regulations have not been enforced, except as hereinafter appears.

Congress must be presumed to have legislated upon this subject having in view this long-continued departmental construction of the statute law, and in interpreting its enactments such executive construction becomes important. Komada v. United States (215 U. S., 392).

But it is urged that, notwithstanding the foregoing construction of the statutes by the Treasury Department and the practice thereunder, the courts have held the contrary view and that we should follow the same.

Space does not permit or necessity require an extended review of all the decisions to which our attention has been called. It is safe to say at the outset that they are irreconcilable.

To illustrate, in the case at bar the board relied upon its own decision in Foard's case (T. D. 28796), decided February 18, 1908. It appeared there that an overvaluation of importation had been made in the pro forma invoice by including therein the amount of certain concededly nondutiable charges. Thereupon the appraiser indorsed on the entry "value correct," returned the same to the collector who treated it as an appraisement and thereon proceeded to liquidation. Thereafter the consular invoice was duly produced which showed the error. The board held that the appraiser's action did not constitute an appraisement and relying upon the Commercial Cable Co. case, to which reference will later be made, held that duty should be taken upon the value shown in the consular invoice. Their decision, however, was upon appeal, and without any written opinion being filed reversed by the Circuit Court for the District of Maryland (T. D. 30936).

In the case at bar the decision of the board has been affirmed in the Circuit Court for the Southern District of New York, also without any written opinion being filed, and we are not, therefore, aided in this case by the reasoning of these two learned courts whose views seem to be at variance upon the question involved here.

We are cited to no decision prior to the case of United States v. Commercial Cable Co. (141 Fed. Rep., 473), decided May 24, 1905, either of the Board of General Appraisers or of a court which seems to be in point upon the question involved here.

In the last-mentioned case the facts were as follows: Entry was made on a pro forma invoice April 19, 1904, and before appraisal the importers produced an invoice duly certified by the consul abroad which was filed with the collector April 21. May 3 the appraiser made his return, approving the value named in the certified invoice, which was less than that stated in the pro forma invoice. The collector assessed duty upon the value based upon the pro forma invoice. The importers contended that it should have been upon the valuation shown by the certified consular invoice and the return of the local appraiser. The Board of General Appraisers sustained the protest.

The collector evidently proceeded upon the theory that duty ought not to be taken in any event upon an amount less than the entered value, which was that stated in the pro forma invoice. In their decision the board said:

> The rule is well settled that an entry on a pro forma invoice remains "open" until the conditions of the bond for the production of the consular invoice have been fulfilled or until the bond itself has become forfeited. * * * The importer's bond for the production of the duly certified invoice is usually conditioned for the payment of such duties as may be found due above the estimated duties. Customs administrative act, June 10, 1890, section 4, provides that "when entry of merchandise exceeding one hundred dollars in value is made by a statement in the form of an invoice (meaning a pro forma invoice), the collector shall require a bond for the production of a duly certified invoice." Unless corrections of value and of liquidation can be made upon the basis of the consular invoice when obtained and approved by the appraiser the provisions of this section would be nugatory. Where an importer gives a bond for the production of necessary documents, or where the collector waives the giving of such bond, the importer's rights are preserved. * * * An entry made upon a pro forma invoice is necessarily tentative and liable to correction on the production of a corrected invoice, duly authenticated, when filed in time. * * * We are of opinion that the giving of the bond required by statute preserved the rights of the importers and left the entry open, it having been made on a mere pro forma invoice. Upon the subsequent production of the consular invoice and on its approval by the appraiser the importers were entitled to have the entry liquidated on the basis of the appraised value corresponding with the value shown by the consular invoice.

The board cites the following cases in support of its conclusion: *In re* Courtin (T. D. 23557); Carnes *v.* Maxwell (3 Blatch., 420; 5 Fed. Cases, 90); Schmeider *v.* Barney (6 Fed. Rep., 150); Howland *v.* Maxwell (3 Blatch., 146; 12 Fed. Cases, 742); Gillespie *v.* United States (124 Fed. Rep., 106).

Upon appeal by the United States the Circuit Court for the Southern District of New York affirmed the decision of the Board of General Appraisers without filing any opinion. The United States did not appeal from this decision, and the case is mainly relied upon by the importers here.

It may be observed that in the Commercial Cable Co. case it appeared that the only appraisal made fixed the value of the merchandise at that shown by the consular invoice, while in the case at bar the appraisal fixes the value at that shown by the entry made upon the pro forma invoice, and in that respect the cases differ. If,

however, it is the law, as stated by the board in the opinion last quoted, that the proceedings in an entry made upon a pro forma invoice remain open until the conditions of the bond have been fulfilled or until the bond itself becomes forfeited, it must result that the appraisement made in the case before us is a nullity.

This decision of the board as affirmed by the court seems to be utterly at variance with the customs regulations and with the construction given to contemporaneous statutes by the Treasury Department, as heretofore set forth, to the effect that duty in no case should be taken upon an amount less than the invoice or entered value, and, as already suggested, it seems to be the first decision in which it has been definitely said that the proceedings in an entry upon a pro forma invoice were purely tentative until the certified invoice was produced or the bond forfeited.

We consider briefly the cases relied upon by the board in its opinion.

In the Courtin case, decided in 1902, the issue was whether certain valid existing regulations relating to importation of goods, claimed to be of American origin and therefore entitled to free entry, had been complied with. The board held, in view of the circumstances, that a sufficient compliance had been made.

In Carnes v. Maxwell, which was decided in 1856 in the Circuit Court for the Southern District of New York, the entry was made in conformity to a mistake in value stated in an original invoice and as a result of which the entered value was too small. The importers immediately discovered the mistake, notified the customs officers thereof, obtained a correct invoice, delivered the same to the customhouse and requested permission to correct the error. Duties were paid on the erroneous value and also the penal duty for undervaluation. There was no appraisal of the entry before the corrected invoice was produced. The court held under those facts that the collector had no right to impose the penal duty, relying upon a decision theretofore made in the case of Howland v. Maxwell, decided in 1853 in the same circuit court.

In that case the value of the merchandise was stated as it appeared in the original invoice, which was erroneous in that respect. Before appraisal, a corrected invoice was received and permission asked by the consignee who made the entry to correct the error by stating the value to correspond with that shown by the corrected invoice. The collector refused to allow this. The appraiser valued the merchandise as shown in the erroneous invoice and the penal duties were assessed. The court held that the oath of the consignee upon the entry made it his duty to acquaint the collector of the second invoice, and that, the same having been received and filed in the customhouse before any action had been taken there to determine the value of the importation, the plaintiffs had a right on a question

of duties merely to claim that the valuation of the importation ought to be made upon the corrected invoice and not upon the one first produced. In this case the court said:

Had the goods been seized for a fraudulent undervaluation, or had an appraisal been made upon the entry before the corrected invoice was produced, the question on this point might stand on different grounds. .

In the case of Schmeider *v.* Barney, decided March 12, 1888, in the Circuit Court for the Southern District of New York, a corrected invoice was made and received before any appraisal; was accepted by the collector as the true invoice, and the original entry was made to correspond to the corrected invoice. It does not appear whether or not the entry was made upon a pro forma invoice. The value shown by the corrected invoice was greater than that stated in the entry- and one question was whether the penal duty could be collected for the undervaluation made in the invoice. The court held that upon the authority of Howland *v.* Maxwell the valuation was properly made upon the corrected invoice and also that the penal duties should not have been assessed.

In Gillespie *v.* United States, decided May 24, 1900, the entry was not made upon a pro forma invoice, but the importers, by mistake, had included the value of certain containers in the value of the merchandise, which containers being of American manufacture were not dutiable. Immediately after entry the importers deducted the value of the containers and pointed the same out to the collector who assented to the correction, but the naval office refused to allow the correction to be made. Before liquidation the corrected invoice was procured, but the collector refused to make the allowance, alleging that the provision of section 7 of the customs administrative act of 1890 provided that duty should not be taken in any case upon an amount less than the invoice or entered value. The Circuit Court for the Southern District of New York sustained the importer's contention, reversing the Board of General Appraisers. In overruling the board, the court in that case stated that it clearly came within the rule laid down in United States *v.* Benjamin (72 Fed. Rep., 51) and United States *v.* Zuricaldy (71 Fed. Rep., 955).

An examination of these two cases last referred to by the court shows that the first involved the question of whether the value in an entry which was practically made under duress and was occasioned by an unauthorized act of the United States consul abroad was conclusive upon the importer. The court held that it was not. The second involved the question of a clerical error, and is not in point because no clerical error is claimed here.

The foregoing decisions do not to us seem to warrant the statement in the decision of the board that an entry upon a pro forma invoice should be held open until the certified invoice is produced or the bond given for its production has been forfeited. Neither do we

think that they are authority for holding that the liquidation can be upon an amount less than the entered value in case an entry is made upon a pro forma invoice, no manifest clerical error or duress appearing.

We are brought, therefore, to the question of whether the decision in the case of United States *v.* Commercial Cable Co. shall be followed here.

We are not concerned in this case with clerical errors because no such error is claimed. In addition to this the customs regulations since and including 1857 have contained provision for relief from mistakes in the assessment of duties resulting from a manifest clerical error. (Cust. Regs. of 1857, art. 208; 1874, art. 534; 1884, art. 611; 1892, art. 925; 1899, art. 1455.)

Some of the cases relied upon by the importers, which we have not specifically mentioned, lose their supposed controlling force because of the fact that the decisions turn upon manifest clerical errors, or upon an entry made under duress, and no duress here is claimed.

The suggestion made in the decision of the Board of General Appraisers in United States *v.* Commercial Cable Co., that unless corrections of value and liquidation can be made upon the basis of the consular invoice when obtained, the provisions of section 4 of the customs administrative act that the importer should produce the duly certified invoice when received would be nugatory, evidently did not take into consideration that this provision is obviously for the protection of the Government and to prevent undervaluation, or that the customs regulations since and including 1857 have contained provisions evidently designed to relieve the importer in proper cases. (Cust. Regs. of 1857, art. 295; 1874, art. 530; 1884, art. 607; 1892, art. 920; 1899, art. 1449.)

These regulations in substance provide that in view of the oath prescribed by law to be taken on entry, making it the duty of the importer in case he discovers at any time after entry any error in the invoice or account produced or receives any other invoice, he shall immediately make the same known to the collector, and that whenever such error is brought to the notice of the collector before "the invoice or account has come under the observation of the appraisers, or any examination has been made of the goods, and application under oath is made to amend the entry by the importer, such application shall be transmitted to the Secretary of the Treasury for such action as may be deemed proper."

From what already appears we conclude that it has always been contemplated when merchandise dutiable at ad valorem rates is imported there shall be presented at the time of entry the original or certified invoice thereof, or a certified copy as the law may have provided, showing the cost of the merchandise so that the appraiser might take the cost into consideration in determining the value for

the assessment of duty. Any variation from this rule when made by regulations or by statute has been for the convenience of the importer.

The controversies and adjudications which have arisen and been had as to undervaluation in a pro forma invoice are, though instructive, not controlling here, because there is a difference between the imposing an additional or penal duty for an undervaluation and the assessment of the prescribed legal rate upon the valuation which the importer sees fit to place upon his goods. The latter is accepting his judgment of the value as a sum below which the value will not be placed, and which may be raised, and the former is imposing a penalty for what is in theory an attempt to evade or avoid the tariff laws. The importer has his option to take advantage of the provision for his benefit, namely, the privilege of entering his goods upon a pro forma invoice or not as he pleases, and has no just ground for complaint if, for the purpose of permitting immediate entry when he has not the papers the law requires him to have or produce, the Government takes him at his word as to the minimum value of his merchandise. Who should know better than he, or who can more quickly or easily ascertain the value of the merchandise he may desire to enter?

The fact that in making provision for an entry in the absence of the original or certified invoice there is only one instance found in the statutes where a delay in liquidation has been provided for, is suggestive of the fact that it was in other cases contemplated liquidation should proceed without delay upon such an entry the same as in other cases.

The Customs Regulations of 1899, article 1420, seem to so contemplate.

The value stated in an entry upon a certified invoice, no duress or manifest clerical error appearing, is, under the provisions of section 7 of the customs administrative act, conclusive upon the importer and duty can not be assessed upon a less value by the collector. Daloz *v.* United States (171 Fed. Rep., 275); Vantine *v.* United States (91 Fed. Rep., 519); Kimball *v.* The Collector (10 Wall., 436, 450); *In re* Irwin (T. D. 25764); *In re* Schulze-Berge-Koechl (T. D. 10533); Ullman *v.* United States (1 Ct. Cust. Appls., 61).

We think, in view of the circumstances under which this section was enacted and in view of the unambiguous language there used, no distinction in this regard can be made between an entry made upon a certified invoice and one made upon a pro forma invoice.

The pro forma invoice is recognized by law. It is made an invoice for entry purposes in the absence of the certified invoice for the purposes of section 5 of the act, and, like it, must be under oath. It is an invoice for the purpose of fixing the penalty for undervaluation under section 7 thereof, and we are unable to conclude that it is not

an invoice for the purpose of the last sentence of that section: "The duty shall not, however, be assessed in any case upon an amount less than the invoice or entered value."

It was said in substance by the Supreme Court in Marriott v. Brune et al. (9 How., 619), relating to the act of 1846 providing that "under no circumstances shall the duty be assessed upon an amount less than the invoice or entered value, any law of Congress to the contrary notwithstanding," that this provision created a species of estoppel so far as not to let the entered value be made lower than was originally admitted in the invoice, and it was not there intimated that there was any doubt that the statute warranted that construction. See also Sampson v. Peaslee (20 How., 571).

In Roebling v. United States (77 Fed. Rep., 601) it was held in substance that although the importer had included in his entered value, which was based on the original invoice, certain items that were not in law a part of the value, yet, the same having been voluntarily included by him could not after appraisal be deducted by the Board of General Appraisers upon hearing of the protest, although it was said that if the appraiser had added the same items they might have been deducted by the board.

This holding was based upon the opinion of the Supreme Court in Oberteuffer v. Robertson (116 U. S., 499), where a similar doctrine was announced. The analogy is plain. One of the grounds upon which the importers here claim relief is that it is a hardship to be compelled to pay duty upon a value which is concededly too high. A like hardship was apparent in the case last cited, but the court held that the provisions of Revised Statutes, section 2900, that duty can not be assessed upon an amount less than the invoice or entered value was plain, and that—

Whatever is put down in the invoice and entry as the value of the goods *per se* can not be diminished, although in fact there may have been included in such value the cost of cartons and packing, unless the invoice or entry shows distinctly what such cost was and that it was included.

In the case last referred to, as here, the importer was compelled to pay on his own valuation of the goods, which was in fact too high; but the hardship is no greater upon the importer and he is no more deserving of relief when the entered value of his goods, based upon a pro forma invoice, is too high than when the same conditions exist in an entry based upon a duly certified invoice.

It is perhaps unnecessary to add that if the importer's declaration of value made with an entry is obtained by duress he is not thereby estopped. In harmony with well-settled legal principles, the law does not recognize that to be his voluntary act, as a consequence of which he can not in a proper case be heard to question the value so declared. Robertson v. Bradbury (132 U. S., 491).

The claim that the proceedings in case of an entry upon a pro forma invoice are tentative and must be held open would seem to be un-

supported by authority or reason. There must, we think, of necessity always be at the time of an entry an invoice or entered value not reducible by the importer after appraisement, unless there is a manifest clerical error or duress, to which duty at once attaches, and that the statement of this nonreducible amount by the importer can not at his option be deferred through the device of a pro forma entry with the accompanying bond.

If in any case it shall happen than an importer's knowledge of the value of his goods is so imperfect as not to warrant an entry upon a pro forma invoice, in view of this interpretation of the statute, if such a case be supposable, he can defer his entry until the requisite knowledge is obtained or the certified invoice has arrived.

We think the learned Circuit Court erred in sustaining the action of the Board of General Appraisers in this case, and the result is that its judgment is *reversed*.