(C.D. 2350)

CARLOS CHAPA ET AL. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 21, 1962)

*Sharretts, Paley & Carter* (*Howard C. Carter* of counsel) for the plaintiffs.
*Joseph D. Guilfoyle,* Acting Assistant Attorney General (*Murray Sklaroff,* trial attorney), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

RICHARDSON, Judge: Consolidated protests, three in all, are before the court on a motion by the plaintiffs for an order invalidating and setting aside certain reliquidations of the collector at the port of Laredo, Tex., and a cross-motion by the defendant for an order transferring the protests to Laredo, Tex., for trial. The merchandise, which is the subject of the numerous entries covered by these protests, consists of wool and viscose rugs and yarn and manufactures of wool and rayon that were exported from Mexico and entered at the port of Laredo, Tex., at various times in 1955, 1956, and 1957.

Plaintiffs contend that these reliquidations are illegal as a matter of law. The crux of plaintiffs' contention is contained in the statement of counsel made on the argument of the motion, as follows (R. 2):

MR. CARTER: May it please the Court, these protests were filed against a collector's reliquidation, on the alleged authority of Section 521, which provides that

the collector, if he finds probable cause to believe there is fraud in the case, may reliquidate an entry within two years (exclusive of the time which a protest is pending) after the date of liquidation, or last reliquidation.

In this case we claim that the collector has not reliquidated within his authority of Section 521, because in his reliquidation he has found an appraised value different from the value which became final and conclusive by virtue of Section 501.

If the collector was dissatisfied with the value, he should have filed an appeal for reappraisement. The law is very clear on that facet, and he cannot circumvent Section 501 by seeking to invoke Section 521.

In opposition to plaintiffs' motion, defendant's attorney argues that (defendant's memorandum, pp. 2–3), "Since the collector, in the reliquidations now under protest, changed only the dutiable value and did not in any way attack the appraised value, plaintiffs' motion should be denied, * * *." The question, which is thus raised by plaintiff's motion in the light of the contentions of the parties, as aforesaid, is whether or not the reliquidations in question affected the final appraised value of the involved merchandise. Unless this question can be resolved as a matter of law from an inspection of the official papers, ultimate disposition of this and other questions must await the outcome of a plenary hearing. Accordingly, counsel have consented that decision on defendant's motion be deferred until after plaintiffs' motion is decided.

The applicable provisions of the Tariff Act of 1930, as amended, read as follows:

Section 501 (19 U.S.C.A., section 1501) :

(a) The collector shall give written notice of appraisement to the consignee, his agent, or his attorney, if (1) the appraised value is higher than the entered value, or (2) a change in the classification of the merchandise results from the appraiser's determination of value, or (3) in any case, if the consignee, his agent, or his attorney requests such notice in writing before appraisement, setting forth a substantial reason for requesting the notice. The decision of the appraiser, including all determinations entering into the same, shall be final and conclusive upon all parties unless a written appeal for a reappraisement is filed with or mailed to the United States Customs Court by the collector within sixty days after the date of the appraiser's report, or filed by the consignee or his agent with the collector within thirty days after the date of personal delivery, or if mailed the date of mailing of written notice of appraisement to the consignee, his agent, or his attorney. * * *

Section 521 (19 U.S.C.A., section 1521) :

If the collector finds probable cause to believe there is fraud in the case, he may reliquidate an entry within two years (exclusive of the time during which a protest is pending) after the date of liquidation or last reliquidation.

While the involved entries are many in number, an examination of the papers discloses certain pertinent facts which are common to all of them. It appears that the involved merchandise was manufactured in Texcoco, Mexico, either by the corporate firm of Tapetes Luxor,

S.A., or by its subsidiary El Bordador, S. de R.L., and from there transported into the United States by motor carrier, where it was entered at Laredo, Tex., for the account of Tapetes Luxor or El Bordador by customs brokers, among whom was the plaintiff Carlos Chapa. In October 1956, the subsidiary El Bordador was dissolved. Importations that were made thereafter were made by the plaintiff Tapetes Luxor, who also assumed certain financial responsibilities for the prior importations of its now defunct subsidiary El Bordador.

Appraisement of the subject merchandise was predicated upon export market value and was completed on various dates in May 1958, at which times the appraiser's returns were filed with the collector. On some of the involved entries, the appraiser noted advances in value, and, on others, he noted reductions in value. Concerning those items of merchandise that were advanced in value, the collector sent notices of advance to the plaintiffs in May 1958. No appeals for reappraisement were filed with respect to any of the involved entries. Duty adjustments were made where warranted by the proceedings, and in June, July, and August 1958, all of these entries were liquidated.

The consular invoices, which accompanied the entry papers, were prepared and executed by the shipper, Export Shipping Office, S.R.L. of Barcelona, Mexico, as agent for the manufacturers and sellers of the involved merchandise. It is to be observed, however, that the consular invoices did not embrace all of the items of merchandise which were covered by the commercial invoices and reflected in the entry papers. Appended to these consular invoices are supporting data, in the form of expense and packing lists, that were endorsed by the manufacturers. The gravamen of the dispute between the parties centers about one item on this expense list which reads:

Unit prices shown in consular invoice represent selling price at point of delivery (Laredo, Texas) and include the following expenses:

\*          \*          \*          \*          \*          \*          \*

Commission paid to Export Shipping Office
(5% x F.O.B. Factory Price)

The amount of the commission was expressed in Mexican currency (pesos) and, of course, varied from invoice to invoice according to the stated units of quantity, measurement, and price involved.

This item on the expense list, as aforesaid, was not involved in the appraisement of the merchandise as returned by the appraiser in May 1958, and did not figure in the collector's liquidations of June, July, and August 1958, either as a dutiable charge or as a nondutiable charge. Neither did this item figure in the collector's reliquidation on August 15, 1958, of consumption entry No. 1284, dated October 17, 1956, and liquidated on July 10, 1958 (protest No. 60/16435). This latter entry was apparently the only entry that was the subject of reliquidation by the collector, other than the

reliquidations in question, which covered all of the entries herein, including this latter entry. However, the reliquidation of consumption entry No. 1284, as aforementioned, resulted in a reduction of the duty assessment, was consistent with the appraisement report of May 15, 1958, on the merchandise covered thereby, and is not material to a discussion of the question at issue.

The reliquidations which are the subject of the instant litigation were made on February 18, 1960. According to notations on all of the entries herein, these reliquidations were predicated upon section 521 (19 U.S.C.A., section 1521), *supra*, and Laredo agent's report L-8-204 of December 2, 1959. This report is not before the court, and the nature and contents of the report are not known to the court. However, it is apparent from an examination of the entry papers that, in the reliquidations under review, the collector's actions were not independent of the appraiser's actions in the premises. On the contrary, it clearly appears from the collector's computations on reliquidation that his actions were subordinated to and dictated by the appraiser. It will be noted that every reliquidation here involved was preceded without exception by an attempted reappraisement of the subject merchandise by the appraising officer. For example, on the worksheet for commercial invoice No. 16128 which is covered by consumption entry No. 6025, dated May 3, 1956, under protest No. 60/19232, the appraisement and collector's computations are noted in red ink and blue pencil, respectively. The appraisement reads:

> Wool yarn—appraised at 43.22 pesos
> (Mex. Cy.) per kilogram, net, packed.
>
> Rug appraised at 160.00 pesos (Mex. Cy.)
> per square meter; plus item marked "X"
> below, less 5%, packed.
>
> CAT
>
> U.S. Cy.
>
> D.C.   Charge for art work "X" $60.00
>
> CAT

The collector's computations for duty assessment against these items of merchandise appear on this worksheet as follows:

$$2.85 \times 160 = 456.00$$
$$749.50^*$$

$$1205.50$$
$$\text{less } 5\% \quad 1145.23$$
$$.05 \times 43.22 = 2.16$$

$$1147.39$$

(*Peso equivalent in Mexican currency for appraised item marked "X" above.)

These notations and computations formed the basis for the May 1958 appraisement of the aforementioned item and subsequent liquidation of the covering entry. And it is plain to see that the collector's liquidation of this entry was based upon the appraisement. Also, appended to the same worksheet, as above noted, is a rectangular slip of paper on which the appraising officer subsequently made the following notation in red ink:

As originally appraised
plus 5% (115 & item "X")
CAT

This notation was followed by the collector's penciled computations for duty assessment purposes, as follows:

2. 85 x 115. 00     327. 75
749. 50
[sic] 777. 25 x . 05= 38. 86
1145. 23

1184. 09
2. 16

1186. 25

These latter notations and computations formed the basis for the reliquidation of the aforementioned items under the February 18, 1960, reliquidations here involved. Here, again, it is manifestly clear from the evidence that the collector's reliquidation of these items on entry No. 6025 was outlined by the appraiser and was not independent of or divorced from such action. Furthermore, the reliquidation of this entry was not based upon, or consistent with, the appraisement of May 1958. Consequently, the fair conclusion to be drawn from the evidence is that the collector reliquidated this entry only because the appraising officer, for whatever reason, first attempted to revise the appraisement.

What has been here observed, with respect to entry No. 6025, is substantially true of all of the entries covered by the instant protests. From the standpoint of reappraisement, the principal difference which exists between the entries consists in the fact, as previously noted, that some of the items covered by the various entries were not included in the expense lists attached to the consular invoices. Such is the case with respect to the items on commercial invoice No. 16128 of entry No. 6025, referred to hereinbefore. In all such instances, reappraisement was undertaken by the appraiser in the manner noted. Concerning those items that were reflected on consular invoice expense lists, reappraisement was undertaken in a similar manner, except that the appraising officer substituted the data on the attached expense list pertaining to the shipper's commission in the place and stead of his own findings. Thus, on the worksheet for commercial

invoice No. 16132 of entry 6025, which is covered by such an expense list, the appraising officer noted:

As originally appraised
plus "shipping" chgs.
CAT

The same procedure and substantially the same language were employed in the attempted reappraisement of all items of merchandise on the various entries involved herein which were covered by such expense lists. And in all instances, whether or not the items of merchandise were affected by expense lists, the collector reliquidated the entries according to the precise dictates of the appraising officer, and not otherwise.

On the basis of the evidence disclosed in the record before us, we are not faced with the necessity of determining on this motion what was or was not within the province of the collector on reliquidation. We are satisfied from the evidence that the collector himself made no such determination upon the reliquidation of the involved entries. The reliquidations of February 1960 were not based upon the appraisements of May 1958, which were finalized through the collector's inertia, but were based entirely upon the attempted reappraisement of the merchandise covered by those entries.

We use the term "attempted reappraisment" in connection with the reliquidations under review advisedly because it is settled law that, under the circumstances attendant upon this record, there could be but one appraisement for each of the involved entries, namely, the appraisements of May 1958. *United States* v. *Bennett*, 2 Ct. Cust. Appls. 249, 252, T.D. 31975; see also *United States* v. *Morewood*, 94 Fed. 639. Consequently, the attempted reappraisements of the merchandise covered by the entries at bar and the reliquidations predicated thereupon come within the principle enunciated by the court in *United States* v. *Calhoun*, 184 Fed. 499, affirmed 215 Fed. 709, wherein the court said, at page 503:

Therefore, from every point of view, even from the very scheme and structure of the whole system, it is apparent that the reliquidation of the collector cannot include a reappraisal, but must proceed upon the basis of the old appraisal.

In the instant case, this principle of law was honored more in the breach than in the observance. Therefore, plaintiffs' motion is granted, and defendant's motion is dismissed as having become moot by reason of the disposition of plaintiffs' motion. Judgment will be entered hereupon, invalidating and setting aside the reliquidation of all entries, covered by the protests herein, that were made by the collector at the port of Laredo, Tex., on February 18, 1960, and directing said collector to make refund of duties to the plaintiffs accordingly.