UNITED STATES *v.* FRANK & LAMBERT (No. 115).[1]

PRO FORMA INVOICE INDORSED "APPROVED" BY APPRAISER.

The importers entered the goods upon affidavit and statement in the form of an invoice, giving bond as required by law. The collector sent this pro forma invoice to the appraiser, and upon the report of the assistant appraiser there appeared the words "Approved, E. S. Fowler, appraiser." Later the importers filed a consular invoice to cancel their bond, and in an accompanying verified statement asserted the incorrectness of the pro forma invoice, but made no application for reappraisement. The entry was liquidated on the basis of the value as given in the pro forma invoice. *Held,* the indorsement of "approved" by the appraiser shows a compliance with the requirement that he should ascertain, estimate, and appraise the actual market value of the merchandise and make a report thereon; furthermore, to hold thus is in accord with the regulations and practice in respect of pro forma invoices.—United States *v.* Bennett & Loewenthal, *infra* (T. D. 31975).

United States Court of Customs Appeals, October 16, 1911.

TRANSFERRED from United States Circuit Court for Southern District of New York, Abstract 21027 (T. D. 29690).
[Reversed.]

*D. Frank Lloyd,* Assistant Attorney General (*Charles E. McNabb* on the brief), for the United States.
*Curie, Smith & Maxwell* (*Thomas M. Lane* of counsel) for appellees.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

HUNT, Judge, delivered the opinion of the court:

The United States appeals from a decision of the Board of General Appraisers sustaining the protest of the importers, appellees, against

---

[1] Reported in T. D. 31973 (21 Treas. Dec., 436).

the assessment of duties by the collector of customs at New York on the value stated in a pro forma invoice made in 1907 and covering certain cotton goods. It appears that Frank & Lambert, the importers, having no consular invoice at the time of entry, made entry upon affidavit and statement in the form of an invoice, as permitted by section 4 of the customs administrative act of 1890, and gave bond in the penal sum of $300, as required by said section. In the statement and affidavit, which is called a pro forma invoice, the importers stated the price of the cotton as follows: 1,978 yards at 4¾d., 389 yards at 7d. On October 23, 1907, the collector sent the pro forma invoice to the appraiser. Upon the report of the assistant appraiser there appear the words "Approved, E. S. Fowler, appraiser." On January 25, 1908, the importers filed a consular invoice to cancel their bond, accompanying the invoice with an application, submitting that their bond was entitled to cancellation upon the ground that the pro forma invoice used on entry was made out erroneously by the shipping clerk in London, the pro forma invoice prices of 1,978 yards at 4¾d. and 389 yards at 7d. being erroneous in that the correct prices as ordered were 1,978 yards at 4½d. and 389 yards at 6½d. The application, which was verified, contained the statement by the importers that they were confident that the appraiser, if requested, would report the consular prices to be correct. The collector appears to have taken no action upon this verified letter or application, but on February 10, 1908, liquidated the entry upon the basis of the pro forma invoice value.

The importers made no application for a reappraisement, but on February 20, 1908, filed a protest based upon the ground that the prices stated in the pro forma invoice were inaccurate through clerical error. The Board of General Appraisers sustained the protest for the reason that the value as entered on the pro forma invoice having been marked "Approved" by the appraiser did not indicate any regular appraisement of the merchandise, and upon the further ground that inasmuch as the consular invoice, which stated a lower value, was furnished to the collector prior to the liquidation of the entry, it was the duty of the collector to reliquidate the entry on the basis of the values as stated in the consular invoice.

The case is now before us upon the principal contention that the board erred because duty was properly assessed upon the value as stated in the pro forma invoice, and that the appraiser's return made on the pro forma invoice was the appraisement of the merchandise, and became final and conclusive against the importers, under section 13 of the act of June 10, 1890.

The pertinent provisions of the act of June 10, 1890, are as follows:

SEC. 4. That, except in case of personal effects accompanying the passenger, no importation of any merchandise exceeding one hundred dollars in dutiable value shall be admitted to entry without the production of a duly-certified invoice thereof

as required by law, or of an affidavit made by the owner, importer, or consignee, before, the collector or his deputy, showing why it is impracticable to produce such invoice; and no entry shall be made in the absence of a certified invoice, upon affidavit as aforesaid, unless such affidavit be accompanied by a statement in the form of an invoice, or otherwise, showing the actual cost of such merchandise, if purchased, or if obtained otherwise than by purchase, the actual market value or wholesale price. thereof at the time of exportation to the United States, in the principal markets of the country from which the same has been imported; which statement shall be verified by the oath of the owner, importer, consignee, or agent desiring to make entry of the merchandise, to be administered by the collector or his deputy, and it shall be lawful for the collector or his deputy to examine the deponent under oath touching the sources of his knowledge, information, or belief in the premises, and to require him to produce any letter, paper, or statement of account, in his possession, or under his control, which may assist the officers of customs in ascertaining the actual value of the importation or any part thereof; and in default of such production when so requested, such owner, importer, consignee, or agent shall be thereafter debarred from producing any such letter, paper, or statement for the purpose of avoiding any additional duty, penalty, or forfeiture incurred under this act, unless he shall show to the satisfaction of the court or the officers of the customs, as the case may be, that it was not in his power to produce the same when so demanded; and no merchandise shall be admitted to entry under the provisions of this section unless the collector shall be satisfied that the failure to produce a duly certified invoice is due to causes beyond the control of the owner, consignee, or agent thereof. * * * And when entry of merchandise exceeding one hundred dollars in value is made by a statement in the form of an invoice the collector shall require a bond for the production of a duly certified invoice.

SEC. 5. That whenever merchandise imported into the United States is entered by invoice, one of the following declarations, according to the nature of the case, shall be filed with the collector of the port, at the time of entry by the owner, importer, consignee, or agent; which declaration so filed shall be duly signed by the owner, importer, consignee, or agent, * * *.

SEC. 7. That the owner, consignee, or agent of any imported merchandise which has been actually purchased may, at the time when he shall make and verify his written entry of such merchandise, but not afterwards, make such addition in the entry to the cost or value given in the invoice or pro forma invoice or statement in form of an invoice, which he shall produce with his entry, as in his opinion may raise the same to the actual market value or wholesale price of such merchandise at the time of exportation to the United States, in the principal markets of the country from which the same has been imported; * * * And provided further, That all additional duties, penalties or forfeitures applicable to merchandise entered by a duly certified invoice, shall be alike applicable to merchandise entered by a pro forma invoice or statement in the form of an invoice. * * * The duty shall not, however, be assessed in any case upon an amount less than the invoice or entered value.

SEC. 10. That it shall be the duty of the appraisers of the United States, and every of them, and every person who shall act as such appraiser, or of the collector, as the case may be, by all reasonable ways and means in his or their power to ascertain, estimate, and appraise (any invoice or affidavit thereto or statement of cost, or of cost of production to the contrary notwithstanding) the actual market value and wholesale price of the merchandise at the time of exportation to the United States, in the principal markets of the country whence the same has been imported, and the number of yards, parcels, or quantities, and actual market value or wholesale price of every of them, as the case may require.

SEC. 13. That the appraiser shall revise and correct the reports of the assistant appraisers as he may judge proper, and the appraiser, * * * shall report to the

collector his decision as to the value of the merchandise appraised. * * * If * * * the importer, * * * shall be dissatisfied with the appraisement * * *, and shall have complied with the requirements of law with respect to the entry and appraisement of merchandise, he may, within two days thereafter give notice to the collector, in writing, of such dissatisfaction, on the receipt of which the collector shall at once direct a reappraisement of such merchandise by one of the general appraisers. The decision of the appraiser * * * (in cases where no objection is made thereto, either by the collector or by the importer, owner, consignee, or agent), * * * shall be final and conclusive as to the dutiable value of such merchandise against all parties interested therein, * * *.

Certain matters become relevant and must be accepted as essentials in the administration of the customs laws. It is plain that under the provisions of the customs administrative act the appraiser is required to "ascertain, estimate, and appraise (any invoice or affidavit thereto or statement of cost, or of cost of production to the contrary notwithstanding) the actual market value" of the merchandise, and thereafter to "report to the collector his decision as to the value of the merchandise appraised." (Secs. 10 and 13 of said act.) It is equally clear that the duty of the appraiser is to make careful examination and to appraise the goods at the actual market value and to indorse these facts upon the invoice and to sign the same. (Art. 1246, Customs Regulations of 1899.) Proceeding, therefore, upon the assumption that compliance with these requirements is indispensable to a valid appraisement, we advance at once to the inquiry whether the record in the present case shows affirmatively that such necessary steps were taken or whether, in the absence of such a showing, there is yet a record which is so far aided by legal presumptions which attend it as to compel the conclusion that there was a valid appraisement and a sufficient report thereof. It is well to bear in mind that we are not called upon to consider a case of omission of any action by the appraiser or collector, for it is conceded the pro forma invoice was before such officials, and that they did act thereon to an extent, the former by stamping the word "approved," together with his name, upon the invoice, and by thereafter returning such stamped invoice to the collector; the latter by liquidating the entry.

Now, the purpose of the statutes which allow an importer to make a pro forma invoice is undoubtedly to enable him to obtain immediate possession of his merchandise. Obviously, this right to such possession is often of vital commercial importance to an importer; hence it would seem that in order to maintain the full enjoyment of the right, the policy of the statute being in aid of facility of importation entry, should be sustained by liberal rather than narrow construction. But on the other hand, official action by a customs officer is presumed to be regularly and lawfully had; and the force of this presumption is not to be passed over lightly, but to be regarded as always present and necessary to be considered when the acts of

customs officials are assailed. As was said by Justice Hunt in Arthur *v.* Unkart (96 U. S., 118):

\* \* \* These officers are, however, selected by law for the express purpose of deciding these questions; they are appointed and required to pronounce a judgment in each case; and the conduct, management, and operation of the revenue system seem to require that their decisions should carry with them the presumption of correctness. This rule is not only wise and prudent, but is in accordance with the general principle of law that an officer acting in the discharge of his duty, upon the subject over which jurisdiction is given to him, is presumed to have acted rightly.

As the corollary of this doctrine, one who would set aside the acts of such officials must assume the burden of proving that in fact or law error has been committed.

The importers say that the word "approved" appearing upon the invoice over the name of the appraiser means nothing, and that "no appraisement, or at least no legally reported appraisement, was made of the merchandise in this case." Offering no testimony other than the papers themselves, they assume the position that there is no presumption of legal action by the appraiser "because he has not acted at all or at least has not registered his action so that the presumption can attach." Looking into this position, we find that it contains two propositions—one, that there never was action; another, that there was action, but that there is no competent evidence thereof, and that therefore the case is to be regarded as if there were no action at all. The statement of these elements demonstrates that they are separate, and lest confusion of them be had, it is well to refer briefly to each.

An appraisement is the act of determining the value, while the report of the appraisement is the written evidence of the performance of such determination. The methods of actually making the appraisement, the means to be used by the appraiser in ascertaining, estimating, and arriving at actual market values, must be employed antecedent to the report. They are the predicates for the report. An appraiser may have samples before him; he may have the report of the deputy appraiser; he may himself have extensive knowledge of the merchandise under consideration; and he may apply all or any of these qualifications in the processes of thought by which he forms his conclusion. Yet none are matters which need be written down, and indeed they could not well be recorded, when we consider the imperative need for that expedition which must prevail in customhouse administration. The appraiser is merely called upon to write the ultimate facts found, namely, the actual market values of the merchandise imported. It would seem to follow as a consequence of these views that, in the absence of an express requirement that the appraiser shall write out such preliminary findings or facts or reasons for his ultimate facts, when he has written down the values he has completed his appraisement, and at once the law surrounds his act by the presumption that every essential antecedent step has been taken.

And as the importers have made no showing of fraud, or that the action of the officials was upon a fundamentally erroneous principle, the case is one for the application of the rule laid down by us in Wolff v. United States (1 Ct. Cust. Appls., 181; T. D. 31217), in that the record, together with the presumptions in favor of the appraisement, are proofs which sustain the action had, provided the appraiser made a report to the collector of his decision as to the value of the merchandise appraised.

Thus we are brought to the second element of the proposition, the point that there was no legal report of appraisement. The pro forma invoice, upon which the word "approved" appeared was for all purposes of entry the invoice. It became the statement upon which the importers made their case and availed themselves of the right to obtain possession of their goods. The statements therein were sworn to and became binding upon those who made them, subject always to the provisions of law as provided for in sections 4 and 7 of the law already cited. But we need not consider the qualifying provisions at this time, because they do not affect the language which makes it the duty of the appraiser to proceed upon the pro forma invoice, and to revise and correct the report of the assistant appraiser as he judges proper, and then to make his decision and to report to the collector the value as decided. The form of the report of the decision as to value is not prescribed by law, and while it might be well, from an administrative point of view, to have a uniformity of words in the expression of the action of the appraiser and for his report, still, if the record shows that action has been had and what it was, such record should be deemed a sufficient report to the collector, even though the language is not as full as might be. We think, too, in the absence of evidence tending to show some omission to do what the law required the appraiser to do, that the word "approved," appearing upon the report of the assistant appraiser over the signature of the appraiser, is, in effect, a statement that the appraiser has adopted as his own the acts and findings of the assistant appraiser and that he has made them his ascertainment, estimate, and appraisement of actual market value of the merchandise. So here, the appraiser having made his decision, the paper with the writing became an account of the transaction, which, when transmitted, became a valid report to the collector.

If the importers had requested reappraisement, further inquiry might be necessary, but in the absence of an application for such relief the facts make the case one where the decision of the appraiser is final and not subject to review.

Appellees urge that the pro forma invoice was erroneously made out by the shipping clerk in London and that therefore the duty of the collector was to withhold such pro forma invoice from appraise-

ment. We readily assent to the view that where a mere clerical error has been made and seasonable effort to correct such error is had every consideration of justice between the importer and the Government calls for rectification. But the record contains no evidence of such a mistake, unless it is to be inferred from the statement contained in the letter of the importers, dated January 25, 1908, addressed to the collector. It may be granted that the letter asserts that the importers made a slight error of fact in the statement of the value of their goods when they entered them upon pro forma invoice. They valued their goods at a little more than they cost. But the statement of value was apparently made with care and fails to show either manifest clerical error or such mistake as appeals for remedy within the spirit or letter of section 24 of the act of June 10, 1890, which authorizes correction of "manifest clerical errors in any entry or liquidation for or against the United States at any time within one year of the date of such entry, but not afterwards." The importers cite the case of United States *v*. Muller, Maclean & Co. (158 Fed. Rep., 405), but that was one where undisputed evidence showed that a rupee mark was mistaken for a dollar mark, and the court very naturally held that such a pure mistake authorized correction. The case well illustrates what is meant by manifest clerical error.

United States *v*. Muller, Maclean & Co. (152 Fed. Rep., 575), affirmed in 158 Federal Reporter, 405, was a case where testimony was heard and it was made to appear that the appraising officer did not perform the duty imposed upon him by law, and because of such total failure the court held that there was no appraisement and that the importer was entitled to relief by the appraisement of duty upon the consular invoice rather than upon the pro forma invoice.

Another aspect of the case should be mentioned. Examination of the practice that has prevailed in the administration of customs laws shows that pro forma invoices have for years constituted the bases upon which the appraisement of merchandise has been had. The act of March 1, 1823, provided for entry by appraisement in the absence of an invoice; so did the act of March 3, 1863, section 2858, Revised Statutes United States. The act of June 22, 1874, sections 9, 10, and 11 (18 Stat., 188), made specific provision for entry on pro forma invoices. Frequent construction of the act of 1874, just referred to, as well as of the authority conferred in preceding acts, leads us to hold that the better rule is that where imports have been entered by appraisement in the absence of an invoice and the value of the invoice afterwards produced is less than that found by the appraisers on the entry, no allowance by return of duty can be made for the difference, but if the invoice shows a

greater value than that ascertained by the appraisement, the United States will be entitled to duties on such excess of value. (See regulations of 1857, art. 360, and 1874, art. 341.) Thus, it was provided by the regulations of 1884, article 329, that—

Where imports have been entered on affidavit and statement, in the absence of an invoice, and the value in the invoice afterwards produced is less than that found by the appraisers on the entry, no allowance by return of duties can be made for the difference. But if the invoice shows a value greater than that ascertained by the appraisement the United States will be entitled to duties on such excess of value. (R. S., 2900.)

We find, too, that the regulations of 1892, article 285; 1899, article 394; and 1908, article 182, provided as follows:

When the certified invoice is received, it must be compared with the entry, and any duty remaining due must be collected. The provisions of the law regarding penalties for undervaluation are alike applicable to pro forma invoices, but no refund of duty shall be made because a certified invoice exhibits a lower value than that shown by the pro forma invoice.

These rulings and regulations show that the conclusions which we have reached are in harmony with the practice which has long been applied to cases where the value given in the pro forma invoice has been somewhat higher than that included in the consular invoice subsequently received.

It is true that the opinion of the Board of General Appraisers, adopted by the Circuit Court in United States v. Commercial Cable Co. (141 Fed. Rep., 473), was to the effect that an entry made on a pro forma invoice remains open until the conditions of the bond for the production of the. consular invoice have been fulfilled or the bond forfeited, and that when the consular invoice is duly produced and approved by the appraiser the entry should be liquidated on the basis of the consular and not the pro forma invoice. But we are constrained to hold that where, as here, the certified invoice is produced after appraisement, and where, as here, no reappraisement was sought or had, the general language of the opinion referred to is not in accord with the true interpretation of the statute. United States v. Merck (91 Fed. Rep., 641). A fuller expression of the views of this court upon this point will be found in the case of United States v. Bennett & Lowenthal, just decided. (2 Ct. Cust. Appls., 249; T. D. 31975.)

We rest our opinion in the present case upon the ground that the learned Board of General Appraisers confined the effect of the word approved, which appeared upon the invoice, within too narrow a scope, and that they erred in failing to regard it as applicable to all steps which the law required the appraiser to take in making his appraisement, as well as in making the report thereof. And inasmuch as the importers have failed to sustain any of their contentions, the decision of the Board of General Appraisers must be *reversed.*