## UNITED STATES *v.* JOHNSON Co. (No. 1714).[1]

REAPPRAISEMENT, LEGALITY OF.

To justify a classification board in declaring null and void an appraisement by three general appraisers on the ground that it was based upon a wrong theory of the law, it must appear *positively, clearly,* and *certainly* that they *did* proceed upon such wrong theory. This does not appear from a record which does not contain a recital of all the facts before the reappraisement board and does not contain any statement as to the theory of law upon which such board proceeded.

United States Court of Customs Appeals, February 28, 1917.

APPEAL from Board of United States General Appraisers, G. A. 7875 (T. D. 36250).

[Reversed.]

*Bert Hanson,* Assistant Attorney General, for the United States.
*Walden & Webster (Henry J. Webster* of counsel) for appellee.

[Oral argument Oct. 20, 1916, by Mr. Hanson and Mr. Webster.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The importations involved in this case were made in October, 1914. The importers are residents of the United States, doing busi-

---

[1] Reported in T. D. 37050 (32 Treas. Dec., 255).

ness in the Bahama Islands and in this country. The merchandise is pineapples produced in the Bahamas, from which the cores have been removed, and was shipped in cans crated in the ordinary manner. The cans and crates were made in the United States and are entitled to free entry. The pineapples are dutiable at 20 per cent ad valorem under paragraph 217 of the tariff act of 1913. The importers obtained and prepared the pineapples in the Bahamas, consigned the same to themselves in New York and there entered them.

There was no ascertainable market value for the merchandise at the point of production or shipment. The local appraiser appraised the merchandise at the entered value. The importers appealed to a single general appraiser who increased the appraisal. Importers again appealed to a board of three by which the judgment of the single general appraiser was affirmed.

Upon reliquidation pursuant to the last reappraisement, the importers protested.

A majority of the classification board, one member dissenting, found upon hearing that the action of the reappraising board determining the market value of the merchandise was without warrant of law, illegal, and void, and sustained the protest. The case is here upon appeal by the Government.

The record before the classsification board, after noting the appearances, etc., opens with the following statement by counsel for the importers:

Nearly all the facts in this case have been set forth in a stipulation between ourselves and counsel for the Government. There is only a little testimony to be taken in addition to the stipulation.

Then follows the testimony of certain witnesses, chiefly directed to the trade understanding of the term " consigned for sale."

Upon the conclusion of this testimony, all of which was introduced by the importers, the stipulation was received in evidence and the case submitted. We quote the stipulation:

United States General Appraisers. Before Board No. 1.

*In re* J. S. Johnson Co., protest against legality of reappraisement. No. 793232/36565.

It is hereby stipulated and agreed between the attorneys for the parties hereto:

1. That the merchandise in question is 100 cases of canned pineapples imported from Nassau, Bahama Islands, in October, 1914, and properly dutiable at 20 per cent ad valorem under par. 217, tariff act of 1913. That said goods were invoiced, entered, appraised by the local appraiser at New York, appealed to reappraisement, which was passed on by General Appraiser Waite; appealed to reappraisement, which was passed on by board No. 2, consisting of General Appraisers Fischer, Howell, and Cooper; that the merchandise was packed six tins in each case, each tin being of the size formerly called gallons, now known as No. 10, containing somewhat less than one gallon each; that all the tins and

cases were of the manufacture of the United States and entitled to free entry under paragraph 404, act of 1913; that the contents were invoiced and appraised as follows:

| Coreless sliced: | For 100 cases. | Equals per case. | Equals per doz. |
|---|---|---|---|
| Invoiced | $112. 86 | $1. 1286 | $2. 2572 |
| Entered by importer | 163. 86 | 1. 6386 | 3. 2772 |
| Appraised by local appraiser | 163. 86 | 1. 6386 | 3. 2772 |
| Appraised by general appraiser | | 1. 808 | 3. 616 |
| Appraised by Board of G. A | | 1. 808 | 3. 616 |

2. That at the trials of the reappraisement case before the single general appraiser and Board 2, it was not contended by either party that there was any market or market value in the Bahama Islands for canned pineapples; that the importer herein, a New York corporation, maintained a canning factory at Nassau, Bahama Islands, and packed and shipped the whole output to itself in New York, and sold the same in the United States; that the invoice in this case purports to state the cost of production and other items as specified in the first part of paragraph L of section 3, act of October 3, 1913, and was in detail as follows, only the first lot of 100 cases being the subject of this protest:

100 c/s gals. coreless sliced pineapple preserved in its own juice, 30 lbs. fruit to c/s, packed 6 tins to c/s:

| | | |
|---|---|---|
| Fruit, at 88c. per c/s | $88. 00 | |
| Labor, at 7c. per c/s | 7. 00 | |
| Gen'l exp., 10% | 9. 50 | |
| Profit on total cost as above, 8% | 8. 36 | |
| | | $112. 86 |

100 c/s gals. sliced pineapple, with cores, preserved in its own juice, 30 lbs. fruit to c/s, packed 6 tins to c/s:

| | | |
|---|---|---|
| Fruit, at 88c. per c/s | 88. 00 | |
| Labor, at 7c | 7. 00 | |
| Gen'l exp., 10% | 9. 50 | |
| Profit on total cost as above, 8% | 8. 36 | |
| | | 112. 86 |
| | | 225. 72 |

Charges:

| | | |
|---|---|---|
| 200 c/s for gal. tins, at 162/5c | 32. 80 | |
| 200 c/s gal. tin (6 tins to c/s, at 33c.) | 66. 00 | |
| Cartage, at 1c. per c/s | 2. 00 | |
| Consular fee | 2. 50 | |
| | | 103. 30 |

Ins. carried in U. S. A.                                                      329. 02

III. The entry as made by the importer bore the following indorsement, made pursuant to the last clause of paragraph I of section 3, act of October 3, 1913:

I hereby certify that the entered value of the merchandise mentioned below was higher than the foreign market value and that the goods are so entered in order to meet advances by the appraiser in similar cases now pending on appeal for reappraisement. The similar cases now pending are entries Nos. 189.095 at the port of New York.

I contend that duty shall be assessed on the basis of the value shown below as the foreign market value.

Items, preserved pineapples; invoice value, $225.72; add to make foreign market value, $139; foreign market value, $225.72; add to meet advance by appraiser in similar cases, $139; entered value, $364.72.

J. S. JOHNSON Co.,
By WM. H. SMITH, V. P., Importer.

IV. That the assessment as made by the collector was as follows:

$99 free.

| | |
|---|---:|
| $381 at 20% | $76. 20 |
| Add'l duty, $181 at 10% | 18. 10 |
| | 94. 30 |
| Amount as entered | 73. 00 |
| Increase | 21. 30 |

V. That, at the trial before the reappraising board herein, the record in the previous reappraisement No. 75118 was admitted in evidence; that the following parts of the record in Reappt. No. 75118, hereto atached, may be admitted in evidence in this case:

Letter from Special Agent Hermes, marked "A," and inclosure, tabulated statement also marked "A."

Letter from Special Agent Hermes marked "B."

Stipulation marked "C."

Statement of cost of production marked "D."

Testimony.

Dated, New York, October 23, 1915.

Omitting signatures and filing marks, Exhibits A and B referred to in the stipulation are as follows:

EXHIBIT A.

NOVEMBER 5, 1914.

ASSISTANT U. S. ATTORNEY GENERAL,

 *641 Washington Street, New York City.*

SIR: In compliance with the verbal request of Mr. Rafter of your office, there is transmitted herewith a tabulation showing the dutiable values of four kinds of canned Bahama pineapple, imported by the J. S. Johnson Co., said values having been determined by figuring back from the U. S. selling prices, under paragraph L of section 3 of the tariff act of 1913, for use in proceedings now pending before the Board of General Appraisers.

Respectfully,

           ————— —————,

           J. S. JOHNSON Co.

Dutiable values of canned Bahama pineapple, determined by figuring back from the U. S. selling prices, under paragraph L of section 3 of the tariff act of October 3, 1913.

No. 10 gallons coreless sliced.

Average selling prices in the United States, per dozen cans_____ $6. 009

Expenses per dozen cans:

(1) Cans, of American manufacture, delivered f. o. b. Baltimore or New York, $45.50 per 1,000_____ 0. 546

(2) Cases, of American manufacture, delivered f. o. b. Baltimore or New York, 13½ cents each_____ . 27

(3) Ocean freight on cans and cases from Baltimore or New York to Nassau, 8¼ cents per case_____ . 17

(4) Marine insurance on cans and cases going to Nassau, 1¼ per cent _____ . 012

(5) Drayage from factory to wharf at Nassau, 1 cent per case_____ . 02

(6) Ocean freight on the finished product, Nassau to New York, 10½ cents per case_____ . 21

(7) Marine insurance on the finished product, Nassau to New York, ¼ per cent of the estimated dutiable value plus expenses 1, 2, 3, 4, and 5_____ . 012

Expenses per dozen cans—Continued.

| | | |
|---|---|---|
| (8) | Drayage in New York, from wharf to cars, 2 cents per case in Manhattan; 3 cents per case in Brooklyn; average, 2½ cents per case | $0. 05 |
| (9) | Cash discount 1½ per cent | . 09 |
| (10) | Loss on account of swells and leaks, estimated 2½ per cent of selling prices | . 15 |
| (11) | Brokerage, estimated 1⅓ per cent of selling prices | . 08 |
| (12) | Duty, 20 per cent of the estimated dutiable value | . 733 |
| | Total expenses | 2. 343 |

| | |
|---|---|
| United States selling prices as above | 6. 009 |
| Less expenses | 2. 343 |
| Dutiable value of contents per dozen cans | 3. 666 |
| Correction on cartage | . 05 |
| | 3. 616 |

Exhibit B.

November 7, 1914.
Assistant United States Attorney General,
   641 Washington Street, New York City, N. Y.

Sir: Referring to the tabulation showing the dutiable values of certain kinds of canned Bahama pineapple, transmitted to you under date of the instant for use in the reappraisement case of the J. S. Johnson Co., I have the honor to report how the various items appearing in said tabulation were obtained.

#### UNITED STATES SELLING PRICES.

Mr. William H. Smith, vice president of the J. S. Johnson Co., submitted the sales book of his firm following my request, from which book I obtained the following figures of sales made between June 1, 1914, and November 2, 1914:

No. 10 (gallons) coreless sliced (six cans per case):
   1, 721 cases, at $3 per case.
      33 cases, at $3.25 per case.

   1, 754 cases, at a total of $5,270.25.

Average price per dozen cans, $6.009.

#### EXPENSES.

(1) *Cans.*—Mr. Smith submitted invoices showing purchases of cans made by his firm at the following prices: No. 10, $45.50 per 1,000, delivered f. o. b. Baltimore or New York.

(2) *Cases.*—Mr. Smith likewise produced invoices covering purchases of cases at the following prices: No. 10, 13½c. each delivered f. o. b. Baltimore or New York.

(3) Ocean freight on cans and cases, from Baltimore or New York to Nassau. I saw a duplicate bill of lading showing a freight charge for a shipment of cans and cases which figured down to 8½c. per case.

(4) Marine insurance on cans and cases going to Nassau. Mr. Smith stated that his firm paid 1½% on their value, but he was unable to submit documentary evidence owing to the fact that the insurance was covered by the Nassau office of his firm.

(5) Drayage from factory to wharf at Nassau. Mr. Smith testified at the hearing in this case that his firm paid 1c. per case for drayage.

(6) Ocean freight on the finished product, from Nassau to New York, 10½c. per case, as per Mr. Smith's testimony at the hearing.

(7) Marine insurance on the finished product, from Nassau to New York, ¼ per cent of the value, as per Mr. Smith's testimony at the hearing.

(8) Drayage in New York, from wharf to cars, 2c. per case in Manhattan, 3c. per case in Brooklyn, as per Mr. Smith's testimony at the hearing.

(9) Cash discount. I found that all these goods were sold subject to 1½% cash discount, and while not every customer avails himself of this discount, I allowed it in the tabulation.

(10) Loss on account of swells and leaks, 2½% of the selling prices. Mr. Smith stated that he was unable to submit figures covering the sales made between June 1, 1914, and November 2, 1914, since this loss was in some cases not claimed until long after the respective sales had been made, and could therefore not be accurately determined at this time. In a previous reappraisement case of this firm the loss was figured at 2½% and was based upon the complete figures of the business done in 1911 and 1912. I therefore made the same allowance in this tabulation.

(11) Brokerage is a commission paid to the selling agents of the firm I could not obtain the complete figures for this season owing to the fact that a great part of the merchandise under consideration is as yet unsold. I therefore adopted the same rate as allowed in the former case, viz, 1½%, which was likewise based upon the business done in 1911 and 1912.

Exhibits C and D likewise referred to in the stipulation·are as follows:

EXHIBIT C.

Board of U. S. General Appraisers.
Before General Appraiser Waite.

In the matter of reappraisement Nos. 75118, 75690, 75688, 75689, 75691, 75743, 75711, and 75909 of J. S. Johnson & Co. Pineapples in cans from Nassau, Bahamas.

It is hereby stipulated and agreed that the annexed letter marked B, showing the wholesale U. S. selling prices of pineapples in cans imported and sold by J. S. Johnson & Co. and certain charges and expenses incidental thereto, was prepared after an examination of the books of said J. S. Johnson & Co., and that the items appearing therein are true and correct and accurately represent the American selling prices of the merchandise in a canned condition covered by the invoices in the above reappraisements.

JOHN R. RAFTER,
*Attorney for Government.*
WALDEN & WEBSTER,
*Attorneys for Importer.*

Dated Nov. 9, 1914.

EXHIBIT D.

*Statement of cost of production furnished by J. S. Johnson Co.*

Pineapples in tins. Reappraisement No. 75690, S. S. *Vigilancia*, June 18, 1914. Entry No. 189095.

Merchandise: Gallons coreless sliced, 30 lbs. to case; 6 tins to case.

Per case invoice figures: Fruit at 2 $\frac{1}{16}$ c. a lb., 88c.; labor, .07c.; general expenses, 10%, .095; profit, 8%, .083; total, $1.128.

Cost figures at end of season: Fruit at 3½c. a lb., $1; labor, .105; general expenses, 10%, .11; profit, 8%, .097; total, $1.31.

The testimony referred to in the stipulation was taken before the reappraisement board of three and is entitled " In the matter of J. S. Johnson & Co., reappraisements 75118, 75690, 75691, 75909, 75688, 75689, 75771."

Just before the taking of this testimony it was stated by counsel for the importers, without challenge so far as the record before us shows, that reappraisement 75690 covered all the different kinds of merchandise; that the others were duplicates except that they didn't cover all four kinds; and that a stipulation had been entered into before the single general appraiser in which the average selling prices in the New York market of the Johnson Co. had been agreed on, " taken from their books," and also that the cost of the cans, the cases, ocean freight, and various other items of expense had been agreed to. The stipulation thus referred to is probably Exhibit C.

From the protest ultimately filed in this case and from what transpired before the reappraisement board, it appears that the question of law before that board was the application of paragraph L of section 3 of the tariff act of 1913 to the appraisement proceedings. It seems unnecessary to quote the paragraph.

Counsel for the importers stated that the point of difference was that, following a late decison of the board, the market value in New York was to be taken and figured back, but contended that the average selling prices of Johnson & Co. were above the market prices in most cases, which fact he desired to show, while the Government's counsel made the point that in said paragraph L there was no reference to American market value, but was rather to "American selling price " of " such or similar merchandise," and contended that, if possible, the evidence should be confined to the selling price of such merchandise, but if this was not obtainable then evidence as to the sales of similar merchandise might be introduced.

Testimony was thereupon introduced tending to support the claim made by the importers. No testimony was offered by the Government, and therefore at the close of their own case the importers rested. The Government rested " on the record made in the case before the single general appraiser." The case was thereupon submitted, with the result already stated, that the reappraisement board affirmed the values found by the single general appraiser.

The classification board in its opinion states, and such is the fact, that " neither the single general appraiser nor the Board of General Appraisers reappraising the merchandise in question filed a memorandum to indicate how the value finally found was arrived at, and there is nothing in the papers which make up the record that directly shows on what facts or by what mental process of reasoning the reappraised value was determined." There is nothing in the record which shows how the similar cases pending, referred to in the certificate of

the importers on the entry in this case as " Entries Nos. 189095," were disposed of. In fact, there is nothing to show, other than said certificate, that such alleged similar cases were pending.

The classification board found upon the record hereinbefore set forth that, although, as stated, there was nothing therein which directly indicated by what mental process the reappraised value was arrived at, nevertheless, in view of the fact that it was the same as that which results from the tabulated statement A, embraced in the stipulation, it must be assumed that that statement was the basis of such appraised value, saying it was " quite unlikely that a value agreeing to the fractional part of a cent per case could have been arrived at by any other method of calculation."

It then proceeded to construe paragraph L and in substance held that thereunder the merchandise at bar should have been appraised under the first provision thereof, but had been instead appraised under the latter part of said paragraph and on the basis of the wholesale price of the merchandise in the United States, wherefore and because of such error the classification board decided, as already stated, that the action of the reappraising board was without warrant of law, illegal, and void.

The initial contention of the Government is that the classification board was not justified in holding that the reappraisement board had proceeded upon a wrong theory of law in appraising the merchandise. The latter, it says, failed to state upon what theory of the law it did in fact proceed, and as a part only of the record made by and before it was before the classification board it was impossible for that board to know or ascertain and it is impossible for this court to determine whether or not as a matter of law the reappraisement board erred in its reappraisement.

From paragraph V of the stipulation we learn that in the trial before the reappraisement board the record in the previous reappraisement No. 75118 was admitted in evidence, and counsel agree that said No. 75118 was the reappraisement by the single general appraiser of the identical merchandise involved in this appeal.

Paragraph V then proceeds *to* declare that certain following *parts* of the record in that reappraisement might be admitted in evidence in the pending case, although manifestly *all* of such record was before the reappraisement board.

What parts of the record are omitted is not disclosed. Whether all parts that are material to the issue here are included is not declared.

Restated, it appears that the reappraisement board had before it certain evidence presented by the importers and the record made in the same case when it was heard by the single general appraiser, only part of which record was before the classification board and is

before us, and it is upon this manifest shortage or variance that the Government bases its first contention.

The importers answer this by saying in substance (1) that the presumption is that the omitted parts are immaterial; (2) that this question was not raised before the classification board; (3) that it is not raised by the assignments of error.

Before considering these answers it is well to note that the statute in terms makes the value fixed by the reappraising board final, that its judgment can only be reviewed in cases where by reason of its proceeding on a wrong theory of the law it is in effect without jurisdiction, and that the review itself is limited to determining whether or not its judgment shall be sustained, as in no instance does the reviewing tribunal itself undertake to fix the value of the merchandise. Wolff v. United States (1 Ct. Cust. Appls., 181; T. D. 31217) and cases cited. Paragraph M, section 3, tariff act of 1913.

In addition to this, it may be said that to justify the conclusion that the judgment of the reappraising board is void because unlawful should require pretty clear demonstration of its legal error and that the burden is upon the importers in this case to show that in law the appraisement board has erred. United States v. Frank (2 Ct. Cust. Appls., 239, at p. 243; T. D. 31973).

We do not think we should presume that nothing but immaterial parts of the record before the reappraisement board were omitted. If it was the intention of counsel on both sides at the time the stipulation was made to present to the classification board and to this court the other issues that have been discussed in this case, the stipulation was not apt for that purpose. If indeed such was the intention, it were easy for counsel here to put it into effect, but that is matter for agreement and not for the adjudication of this court. The stipulation speaks for itself, the language thereof must be given its ordinary meaning, and from this it appears that parts of the record—what parts we do not know—which made up the case before the reappraisement board are not before us. While there is some inherent probability in the statement of the classification board, in substance that from the fact that the reappraisement values are identical with those arrived at in the stipulated statement A, it may be assumed that the judgment of the reappraising board was founded thereon, yet we are unwilling without the whole record before us to so hold, especially when such conclusion, if the views of the classification board on the interpretation of paragraph L of section 3 be upheld (which question we do not consider) would result in declaring void as based upon a wrong principle of law the judgment of the reappraisement board. The classification board fortifies its assumption by remarking that there was absolutely no other evidence in the case which justifies the finding of such value. If we knew that

the only material evidence which was before the reappraisement board was before us, we might agree therewith, but this we do not know.

As to the second answer of the importers, it does not appear that this objection was not made before the classification board.

As to the third answer, we think, without reciting the same, that the assignments of error clearly warrant and support this initial contention on the part of the Government.

We feel constrained, therefore, upon the record here and for the reasons hereinbefore suggested, to reverse the board.

There is one other feature of this case to which reference should be made.

The protest in terms was against the action of the appraisement board, the single general appraiser, and the local appraiser. It claimed, among other things, that no additional or penal duty should be assessed; that each shipment (there are apparently seven) should be appraised as of its date instead of adopting an average price for the entire season, as it was assumed the appraisement board had done; that the entered value was higher than the foreign market value; that the goods were so entered in order to meet advances by the appraiser in similar cases then pending and therefore the entered values were not binding upon the importers; that the goods should be assessed upon the invoice values of the contents of the tins without additional duty, and that if not so the duty should be assessed upon the entered value thereof with no additions.

In stating the questions involved in the case the classification board said the assessment was attacked upon the ground that it was based upon a value arrived at by a single general appraiser and by a board of general appraisers in an unlawful manner, and further, that—

It is, of course, the decision of the board of three general appraisers fixing the market value which forms the basis of the collector's assessment of duty complained against that we are called upon to review, the decision of the single general appraiser being pertinent only in so far as it appears to have fixed the same value as that fixed by the board and arrived at, as indicated by the record, by the same line of reasoning and upon the same theory.

The order of the classification board was: " The protest is therefore sustained  *  *  *  and the collector will reliquidate the entry accordingly."

Without considering any other phase of the case, it is at once manifest that upon such protest the judgment of the classification board can not be affirmed. There is in the record no justification whatever for an order that reliquidation be had upon less than the entered value, yet the order can not be otherwise construed as we understand the opinion.

It appears that the value found by the single general appraiser was affirmed by the board of three, while the value fixed by the local

appraiser was that at which the merchandise was entered. The direction of the board to the collector is to reliquidate accordingly, and it may well be thought, as urged by the Government, that the decision of the classification board fails to determine the issues raised by the protests. If by directing reliquidation "accordingly" it was meant according to the protest, that might mean according to the value found by the single general appraiser, which would afford no relief whatever to the protestants; if it was meant to reliquidate upon the value found by the local appraiser, that would be contrary to the part of the protest which challenges his action; or if it was meant to reliquidate on the basis of the invoice value, such reliquidation would be unlawful, as already pointed out. If we were to attempt to modify instead of reversing *in toto* the board's decision, it would be extremely difficult if not impossible upon this record for us to say what entry ought to be made.

Without intending, however, to depart from the reasons earlier mentioned for the judgment here rendered, attention is called to these matters as indicating the difficulties attendant upon any other disposition of the case.

The judgment of the Board of General Appraisers is *reversed*.