(C. D. 499)

A. M. & J. SOLARI, LTD. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided May 19, 1941)

*Philip Stein* for the plaintiff.

*Charles D. Lawrence*, Acting Assistant Attorney General (*Richard E. Fitz-Gibbon* and *Joseph A. Howard, Jr.*, special attorneys), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges

EVANS, Judge: This is an action against the United States in which the plaintiff seeks redress from the action of the collector of customs at the port of New Orleans in collecting duties on certain importations of whisky which were seized and destroyed by the collector.

We set forth plaintiff's claims as they appear in his protest as follows:

Protest is hereby made against your decision, assessing duty against A. M. & J. Solari, Ltd., importer of above listed merchandise, for the following reasons:

1. A stop order was issued and merchandise was seized by the Collector of Customs, which prevented withdrawal of merchandise for consumption and liquidation of entry by the importer.

2. The importer was without knowledge that the merchandise seized would be destroyed without due notice being served on the importer.

3. The importer was without knowledge of the specific date or dates on which forfeiture and destruction would be exercised by the Collector of Customs, and therefore was unable to file petition for remission or mitigation of the forfeitures incurred, in order to prevent or delay destruction of the merchandise.

4. The importer had no knowledge of fraudulent activities of foreign distilleries and disclaims all responsibility in implications of fraud in connection with age certificates filed with the Collector of Customs.

5. The assessment of customs duties against the importer imposes a very severe penalty and hardship which is entirely unfair and constitutes a violation of his rights, in view of the fact that the importer was in no way implicated in the attempted fraud alleged by the Government.

6. The importer was not given an opportunity to protect his rights and was thereby made the victim of circumstances entirely beyond his control.

7. The merchandise did not enter the commerce of the U. S., was never released for consumption, and therefore no customs duties are due the U. S. Government.

8. Customs duties aggregating $2000.20 paid by the importer were unjustly and illegally collected by the Collector of Customs, and a refund of the amount involved, by the Collector of Customs to the importer is requested.

The importer reserves the right to amend this protest.

These pleadings were amended by adding the following claims:

That the merchandise in question was destroyed contrary to law. That the merchandise was never imported, and that therefore, the protestant should not be subjected to duty on the same.

That there is no provision of law under the Tariff Act of 1930 as amended, and the Pure Food and Drug Act of June 30, 1906 as amended under which any claim for duty is chargeable against the protestant.

That the duty paid by the protestant should be refunded by reason and under the authority of: Section 492; Section 520—(a), (1), (2) and (3); Section 557; Section 563; Sections 602–to 616 inclusive; Sections 617 and 618. Customs Regulations of 1931; Articles 528 to 547 inclusive; Article 643; Articles 1079 to 1129 inclusive; T. D. 46805 and T. D. 48104.

That the decision of the Collector and the Secretary assessing and/or collecting and/or refusing to refund and/or denying relief from payment of the duty paid by the protestant is contrary to the provisions of law and the Customs Regulations above last referred to.

That the seizure and destruction of the merchandise involved; the assessment and failure to refund the duty is contrary to law; deprives the protestant of his property without due process of law, and in violation of amendment 14 of the Constitution of the United States of America.

That the Collector and the Secretary have assessed and collected duty under misapprehension and misinterpretation of the law and regulations governing merchandise of the kind involved in this Protest.

That the procedure and rulings followed and issued respectively by the Collector and/or the Secretary, and their official acts and decisions pertaining thereto are arbitrary in that they are contrary to law, regulations and the legal and constitutional rights of the protestant herein.

The record herein discloses an unusual series of happenings. In January, 1936, there arrived at the port of New Orleans two shipments of whisky from Cuba, consigned to A. M. & J. Solari, Ltd., the plaintiff herein. The shipments, one consisting of eight barrels and the other

of two barrels, were entered for warehouse and were placed in an authorized bonded warehouse.

We will take up the entries separately. On January 22, entry 477 was made by the importer which covers an importation of eight barrels of bourbon whisky. The consular invoice was certified before the United States consul in Cuba on January 17, 1936, and the warehouse permit was issued at New Orleans January 22, 1936. The said permit carries a notation indicating that there was to have been a gauging and sampling at the wharf subject to the Food and Drug Administration Act. The summary of entered value and extension sheet, Form 6417, dated January 22, carries the notation under packages to be examined "Gauge & Sample Wharf" underneath which appears "No Sample Desired U. S. Department of Agriculture Food & Drug Administration." The merchandise was examined on the 23rd of January, 1936. The Return and Certificate of Weight, Gauge, or Measure was made under date of January 25, 1936. The consular invoice carries this certificate:

It is hereby declared that the Whiskey covered by this invoice has been manufactured at Puentes Grandes, Havana, Cuba, by Mill Creek Distillery Ltd., out of 15% Barley Malt imported from Canada, 60% Corn imported from United States, 25% Rye imported from United States.

It appears from a sticker pasted on the summary of entered value that on March 9, 1936, the Agricultural Department, Food and Drug Administration, did procure a sample of this importation and that thereafter on April 27, 1936, a notice on Form F. D. 777 was addressed to. A. M. & J. Solari, Ltd., 201 Royal St., New Orleans, La., the importer in question, advising that an analysis of the sample of the liquor taken from the importation indicated that the merchandise was misbranded as to age and that action would be taken as to the exclusion of the shipment. Said notice reads as follows:

Inspection and analysis of the sample from the following-described shipment having led to the result indicated below, you are hereby notified that action under the provisions of the Food and Drugs Act, June 30, 1906, as to the exclusion of said shipment from consumption in the United States will be taken at the station of the Department of Agriculture at the above address three days (Sundays not included) from the above date, at which time and place you may be present and submit testimony, or at or before which time you may file a statement in writing.

Upon receipt of this information, and perhaps a notice from the office of the collector of customs, the importer, according to his testimony, wrote to the seller and exporter in Cuba advising of the action taken by the Food and Drug Department and the customs officials and asked said exporter and seller to furnish evidence to controvert the claimed misbranding. The record shows that in response thereto the seller sent over a certificate which, according to a date stamp on the face of the certificate, which is in Spanish, was received by the

importer on January 23, 1936. The record also is undisputed as to the fact that the importer, together with the customs broker, reported to the customs officials and to the Food and Drug Department, where they presented the certificate as their evidence as to age, and that the importer received no further notice as to what had happened to the importation until he was subsequently notified to pay the duties thereon.

The official papers, supported by the testimony, show that on March 11, 1936, the customs agent at New Orleans sent a notice to the Mill Creek Distillery, Ltd. (seller), who were the exporters of the liquor, advising that the merchandise had been libelled and seized for submission by the seller of false and fraudulent documents with reference to the age of the product, knowing at the time the documents were executed that they were false and fraudulent. Thereafter, pursuant to regulations, art. 1105, Customs Regulations of 1931, the collector directed that an appraisement be made of the domestic value of the liquor in question and the appraiser under date of March 13 complied with the request and showed that the domestic value of the merchandise in question was $4,015.76.

A copy of the report of seizure, Treasury Form No. 5955, together with the appraisement made, reads as follows:

UNITED STATES CUSTOMS SERVICE

District No. 20      Port of New Orleans

Acting Collector's Office      Mar. 11, 1936
(Preparing office)      (Date of preparation)

Sir: You are hereby notified that the property below was seized from Mill Creek Distillery Ltd., (Seller), Havana, Cuba ex Am. ss Sixaola (1/20/36) arriving
(Name of individual)      (Vessel or vehicle)
from Havana, Cuba at Independent Bonded Warehouse, on February 27, 1936,
(Port or place)      (Place of seizure)      (Date of seizure)
and has been delivered to the Customs Seizure Room.

|  | Foreign Value | Domestic Value |
|---|---|---|
| Eight (8) barrels bourbon whiskey, 402.60 proof gallons, 110 proof. (Warehouse Entry No. 477) | 909. 08 | |
| Duty | 1, 610. 40 | |
| Int. Rev. Tax | 805. 20 | |
| Frt & Tollage | 21. 79 | |
| Costs & Profit 20% | 669. 29 | |
| Domestic value | | $4, 015. 76 |

JWC 3/13/36

Merchandise liable to seizure for submission by seller of false and fraudulent documents with reference to the age of his product, knowing that at the time the documents were executed they were false and fraudulent. The rate of duty for whiskey is contingent on its age. Chemists in charge of the Customs laboratory and the Food & Drug Administration laboratory, declare that the whiskey does not have the analysis of a 4 year old whiskey according to the standards of the U. S. P. X.

Section of laws violated: Sec. 592, T. A. 1930, as amended by Anti-Smuggling Act of 1935.
Names and designations of officers making physical seizure: Ralph D. Kern, Customs Agent.
Arrests: None

To the Acting Collector of the Port.

RALPH D. KERN
(Name)
Agent of Customs.
(Designation)

To the Appraiser: You will examine and appraise the above-described seized goods according to Sec. 606, T. A. 1930, and indorse return hereon.   If perishable or immediate sale advisable, so state.

N. L. LABLANC,
Acting Collector.

According to the testimony of the deputy collector at New Orleans, seizure 1762 related to the eight barrels of whisky covered by warehouse entry 477.   This appraisement was made March 13, 1936, at a domestic value of $4,015.76, as indicated above.   The testimony indicates that seizure 1762 of these eight barrels was reappraised on August 13, 1936, and that the domestic value given on the appraisement was $503.25.   The witness further stated that the collector ordered a reappraisement but that there was no definite date in the record.   There is no record among the official papers of this reappraisement.

Thereupon notice of seizure was published in accordance with law, and the merchandise, pursuant to direction, was ordered destroyed and was so destroyed.   The reason given by the customs agent for the seizure was that false and fraudulent documents, with reference to the age of this product, had been given by the seller and he cites section 592, Tariff Act of 1930, as amended by section 304 (b) of the Antismuggling Act of August 5, 1935, vol. 49 Stat. L. 527, as the law that was violated.   We copy herewith section 592 and the amendment thereto as follows:

SEC. 592. SAME—PENALTY AGAINST GOODS.

If any consignor, seller, owner, importer, consignee, agent, or other person or persons enters or introduces, or attempts to enter or introduce, into the commerce of the United States any imported merchandise by means of any fraudulent or false invoice, declaration, affidavit, letter, paper, or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or appliance whatsoever, or makes any false statement in any declaration under the provisions of section 485 of this Act (relating to declaration on entry) without reasonable cause to believe the truth of such statement, or aids or procures the making of any such false statement as to any matter material thereto without reasonable cause to believe the truth of such statement, or is guilty of any willful act or omission by means whereof the United States is or may be deprived of the lawful duties or any portion thereof accruing upon the merchandise or any portion thereof, embraced or referred to in such invoice, declaration, affidavit, letter,

paper, or statement, or affected by such act or omission, such merchandise, or the value thereof, to be recovered from such person or persons, shall be subject to forfeiture, which forfeiture shall only apply to the whole of the merchandise or the value thereof in the case or package containing the particular article or articles of merchandise to which such fraud or false paper or statement relates. The arrival within the territorial limits of the United States of any merchandise consigned for sale and remaining the property of the shipper or consignor, and the acceptance of a false or fraudulent invoice thereof by the consignee or the agent of the consignor, or the existence of any other facts constituting an attempted fraud, shall be deemed, for the purposes of this section, to be an attempt to enter such merchandise notwithstanding no actual entry has been made or offered.

SEC. 304.

(b) Section 592 of the Tariff Act of 1930 (U. S. C. Supp. VII, title 19, sec. 1592) is amended by inserting after the words "or aids or procures the making of any such false statement as to any matter material thereto without reasonable cause to believe the truth of such statement," the following: "Whether or not the United States shall or may be deprived of the lawful duties, or any portion thereof, accruing upon the merchandise, or any portion thereof, embraced or referred to in such invoice, declaration, affidavit, letter, paper, or statement;

As stated above, there appears to have been no document submitted on entry certified to by the seller, which carried any false or any other statement as to the age of the liquor.

The report of seizure set out by the special agent states that chemists in charge of the Customs laboratory and the Food and Drug laboratory declare that the whisky does not have the analysis of the 4-year old whisky, according to the standards of the U. S. P. X. It is to be observed that the Food and Drug Administration notice to the importer, copied above, states that the merchandise was seized because it was misbranded as to age, and that the liquor had been detained. The evidence clearly shows that the only statement submitted as to the age of the liquor was one that was submitted in Spanish by the importer, and as nearly as our limited knowledge of Spanish will enable us to determine, it is a certificate of the Department of Agriculture, Bureau of Rents and Taxes, as to the origin and age of the liquor involved. There seems to be a declaration on this document which certified by the president of the Mill Creek Distillery to the correctness of the certificate but if we were to give any weight to this certificate at all (and we probably ought not to do so, because it has not been translated) it appears that it was not presented until *after the warehouse* entry had been made, and, as a matter of evidence, to satisfy if possible the Department of Food and Drugs that the liquor in question had been in fact aged in wood more than 4 years. It would therefore seem that the action of the special agent in making seizure was premature and unwarranted.

Title 21, U. S. Code, relates to foods and drugs. Section 11 defines the requirements for examination of samples and notice of adulteration

and misbranding, etc. Section 15 further relates to the examination of samples and the refusal of admission and delivery to consignee, pending examination and decision, and charges for storage and lien thereon. It is observed that the definition of foods includes all articles "used as food, drink, confectionery, or condiment by man or other animals, whether simple, mixed, or compound." Customs Regulations of 1931, based upon the Food and Drug Act, are found in article 530 *et seq.* These regulations follow closely the statute with such amplification and direction as was intended to make them workable. They provide for procedure at laboratory ports and the official papers indicate New Orleans was a laboratory port. These regulations provide for the taking of samples, publication of notices, and among other things provide, art. 538 (*a*), "Liquidation of all entries of goods directed to be held pending examination will be suspended until it shall have been ascertained whether or not delivery is refused under the law." They provide for notice of release, notice of violation, notice of rejection, for reconditioning; etc. They are too long to set out in detail. The Food and Drug Act, *supra*, section 9, defines the meaning and application of the term "misbranded." This merchandise was seized because the barrels were misbranded. The law provides that if any article of food or drug is "misbranded" or "is otherwise falsely labeled in any respect, the said article *shall be refused admission*, and the Secretary of the Treasury shall refuse delivery to the consignee and shall cause the destruction of any goods refused delivery which shall not be exported by the consignee within 3 months from the date of notice of such refusal under such regulations as the Secretary of the Treasury may prescribe." [Italics ours.]

It appears from the notice published by the Food and Drug Act that a hearing was ordered and that the importer presented such evidence as he possessed as to the age of the liquor. And it must therefore be presumed that the officials of the Agricultural Department, Food and Drug Bureau, proceeded in the manner provided by law to the disposition of the merchandise required to be made in case of misbranded articles. Article 541 of the customs regulations, *supra*, provides:

Art. 541. Rejection—Notice of.—(*a*) In all cases where the goods are to be refused entry, the chief of the station within one day after hearing, or if the importer does not appear or reply within three days after second notice, shall notify the collector accordingly on Food and Drug Administration Form "F. D. 776—Collector, Statement of Violation" in duplicate. Collectors will file by laboratory serial number or entry number as most convenient.

(*b*) Not later than one day after receipt of this notice the collector shall sign and transmit one of the copies to the importer, which shall serve as notification to the importer that the goods must be exported or destroyed within three months from such date, as provided by law; the other notice to be retained as office record and later returned as report to the chief of station. The importer shall

in all cases return his notice to the collector, properly certified as to the information required, as the form provides, and it shall then be transmitted to the surveyor, or to the inspector where there is no surveyor.

The testimony is uncontradicted that the importer received no notice such as is required by paragraph (*b*) of the aforesaid article. Had he received notice he might have either exported the merchandise if the Food and Drug Department held it nonadmissible as a prohibited commodity, or relabeled it as provided in section 542 of said regulations. We assume that the orderly proceedings providing for condemnation, exportation, or relabeling, as described in the customs regulations, and as provided for in the Food and Drug Act, *supra*, were not complied with, because of the notice of seizure. We know of no statutory authority, nor can we say that a seizure based upon legal evidence of violations of the statute, warranting seizure, could prohibit a seizure by the proper customs authority in a case where the Food and Drug Department had acquired jurisdiction to enforce compliance with the regulations governing examination and/or rejection of food and drugs when imported from a foreign country. Yet orderly procedure and respect for the authority of coordinate departments of the Government, would, it seems to us so require, and in fact, the Food and Drug Act directs, it seems to us, the suspension of activities by the customs department until final action in the Food and Drug Department shall have been completed. Inasmuch as there was no lawful basis for the seizure of the eight barrels of whisky involved by the customs authorities as stated in notice of seizure, the subsequent action of the customs department appears to have been unwarranted and illegal. And since misbranded food and drugs cannot be "admitted" to the commerce of the country we hold that there could have been no lawful duty collected upon the eight barrels in question, assuming that the Food and Drug Department found them to have been misbranded and that there was no relabeling thereof. In support of this ruling we cite the case of *Kreutz & Co.* v. *United States*, 20 C. C. P. A. 109, T. D. 45752, where the law and regulations governing merchandise required to be examined by the Food and Drug Department, is clearly discussed. It is true, in that case the merchandise was of a type that was prohibited. Section 15 of the Food and Drug Act, *supra*, provides that falsely labeled merchandise is prohibited from entry. It is immaterial in this case that this merchandise, in view of the Food and Drug Act, if such was a fact, might have been labeled to correctly state the age, so as to have been permitted entry. The facts appear that the merchandise was seized and destroyed without warrant of law. It never entered the commerce of the United States.

Another illegality in the proceeding also appears. The statute requires that seized merchandise shall be appraised on the domestic

value, section 606. Following this statute the collector of customs directed an appraisement which was duly made, as appears on the face of the notice of seizure set forth above. It has been held, in the case of ordinary and regular appraisements, that there is no authority for a second appraisement. *United States* v. *Frank & Lambert*, 2 Ct. Cust. Appls. 239, T. D. 31973. Although there is nothing in the statute which directly prohibits a second appraisement where one is made on the basis of domestic value, we consider that such an appraisement would stand on no different footing than the ordinary appraisement on the basis of dutiable value, and therefore we hold that there was no lawful authority for the second appraisement which, it appears by the oral testimony, was made by the direction of the collector of customs, although no such appraisement appears in the files. What the motive was for making this second appraisement could only be surmised and it would add nothing to this decision to enter into a discussion of that feature of the case.

With reference to invoice 565, entry 490, it appears that this warehouse permit was dated January 29, 1935, which appears to have been an error, as the merchandise did not arrive until January 27, 1936. On January 30 samples were taken by the Food and Drug Administration of the Department of Agriculture. On February 5 a notice was sent to A. M. & J. Solari, Ltd., on Form 777, of action to be taken under the Food and Drug Act because of a claimed misbranding "as to age" of the two barrels of liquor covered by said invoice. The minutes of the hearing make no distinction between the hearings on this importation and the hearing on the eight barrels covered by entry 477, *supra*, so far as the action of the importer before the Agricultural Department was concerned. Nor is there anything in the record to show what action the Food and Drug Department took in compliance with law and the customs regulations above cited. It does appear, however, that a notice of seizure was issued March 11, 1936, by the customs agent, a copy of which reads as follows:

UNITED STATES CUSTOMS SERVICE

| District No. 20 | Port of New Orleans |
|---|---|
| Acting Collector's Office | Mar 11 1936 |
| (Preparing Office) | (Date of preparation) |

Sir: You are hereby notified that the property described below was seized from Cia Nacional de Vinos Y Licores, S. A., (Seller), Havana Cuba.
(Name of individual)

ex Am. ss TIVIVES (1/27/36) arriving from Havana, Cuba at Independent Bonded
(Vessel or vehicle)                          (Port or place)          (Place of seizure)

Warehouse, on February 27, 1936, and has been delivered to the Customs Seizure
(Date of seizure)

Room.

Two (2) barrels rye whiskey, 96.39 proof gallons.  Foreign Domestic
102 proof.  (Warehouse entry No. 490)        Value   Value
                                                  186. 96
                                         Duty    385. 56
                                    Int. Rev. Tax  192. 78
                                    Int. & Tollage    5. 54
                           Costs & Profit 20%  154. 17  $925. 01

JWC 3/13/36

Merchandise liable to seizure for submission by seller of false and fraudulent documents with reference to the age of his product.  The rate of duty for whiskey is contingent on its age.  Chemists in charge of the Customs laboratory and the Food & Drug Administration laboratory, declare that the whiskey does not have the analysis of a 4 year old whiskey according to the standards of the U. S. P. X.

Sections of laws violated: Sec. 592, TA 1930, as amended by Anti-Smuggling Act of 1935.
Names and designations of officers making physical seizure; Ralph D. Kern, Customs Agent
Arrests: None

To the Acting Collector of the Port                 Ralph D. Kern
                                                      (Name)
                                                 Agent of Customs
                                                    (Designation)

To the Appraiser: You will examine and appraise the above-described seized goods according to Sec. 606, T. A. 1930, and indorse return hereon.  If perishable or immediate sale advisable, so state.

N. L. LaBlanc,
*Acting Collector.*

Appraisement was made on the basis of domestic value noted on the face of the above.  No reappraisement of the domestic value with reference to this invoice and entry was ordered or directed in this case.

At this point it should be noted that samples from the two barrels of whisky were taken on February 1, 1936, and the importer was notified on January 30, 1936, according to the date on the Food and Drug Administration notice of seizure.  According to the sticker pasted on the summary of examination and appraisement sheet, the sample notice was dated January 30, 1936.  Under article 536 of the Customs Regulations of 1931 it is required that on the same day notice be sent by the collector or appraiser to the importer to the effect that samples have been taken and that the goods must be held intact, pending a notice of the result of inspection and analysis.

Having reference to the stamp on the summary sheet covering the eight barrels of liquor, to the effect that no samples were desired by the Department of Agriculture, Food and Drug Bureau, on January 27, 1936, the inference might be drawn that the analysis of the two barrels of liquor of warehouse entry 490 may have prompted the taking of samples on March 9 from the eight barrels involved.

The consular invoice covering the two barrels under entry 490, *supra*, carries this certificate as to the place of manufacture and as to age:

It is hereby declared that the whisky covered by this invoice has been manufactured at "Triumph" Distillary by Cia. Nacional de Vinos y Licores, S. A. out of rye imported from Spain and it was manufactured in the year 1929, aged in wood from the same year.

In addition thereto there appears with the papers a certificate of age which recites, among other things, that "this whisky is more than 4 years old and aged in wood from the year 1929." There is no mark on the last-mentioned certificate to indicate when it was received by the customs officials, although it is now attached to the declaration of the shipper of food and drug products, Form 198.

The said notice covering warehouse entry 490, was addressed to the Cia. Nacional de Vinos y Licores S. A., seller, at Havana, Cuba, and thereafter a notice to the public was published in a local newspaper in New Orleans, as required by law and regulations covering seizures, and eventually the merchandise was destroyed by direction of the Director of Procurement and the Treasury Department, under date of February 4, 1937. Under the same date the same authority directed the destruction of the eight barrels of liquor. In none of the notices did the name of the importer appear and the undisputed testimony is that he received no notice and that he had no knowledge of the seizure and of the destruction until the demand was made for the payment of duty on both importations.

With reference to the eight barrels of whisky covered by warehouse entry 477, which were appraised at a domestic value of $4,015.76, the customs authorities proceeded contrary to law and regulations provided for seizures where the appraised value was more than $1,000. Section 610 of the Tariff Act of 1930 is as follows:

SEC. 610. SAME—VALUE MORE THAN $1,000.

If the value returned by the appraiser of any vessel, vehicle, merchandise, or baggage so seized is greater than $1,000, the collector shall transmit a report of the case, with the names of available witnesses, to the United States attorney for the district in which the seizure was made for the institution of the proper proceedings for the condemnation of such property.

Article 1116 of the Customs Regulations of 1931 prescribes specific regulations covering the procedure to be followed upon the seizure of merchandise. Paragraph (e) thereof reads as follows:

(e) When the appraised value of the seized property exceeds $1,000 the collector will, in the absence of any application to the bureau for relief or an offer to pay the domestic value thereof, as provided in article 1113, report the facts to the United States attorney of the district in which the seizure was made as provided herein.

In view of this statute and the regulations and the conclusions of the court as recited above, concerning the seizure and destruction of the eight-barrel lot we are of the opinion that the eight barrels of

liquor, having been held because of misbranding, there could have been no legal entry made thereof until that question had been disposed of and the misbranding corrected. Inasmuch as we have entertained the presumption that the Food and Drug Department performed its duty and found that the liquor was misbranded as a fact, it could not have entered into the commerce of the United States in that condition, and since the record shows that it was seized and destroyed while in that condition, we hold that there was no legal entry thereof and consequently no duty should have attached. With this view it is not necessary for us to determine whether or not the failure to have reported the merchandise to the United States Attorney's office under section 610, *supra*, entitles the importer to any relief in this case.

With reference to the two barrels of whisky on entry 490, the same conclusion must be reached as to the prohibition against entry, since it was found to have been misbranded by the Food and Drug Department.

On the questions of notice of seizure it appears that the customs officials followed the procedure provided by law, in that the statute does not require that a notice be sent to the importer.

After careful consideration of the facts and the evidence produced and the excellent briefs submitted, we are of the opinion that the importer is entitled to a refund of the duties paid. It is so ordered.